# WELNER v. STEARNS et al.

No. 2290.  Decided December 28, 1911 (120 Pac. 490).

1. ADVERSE POSSESSION—POSSESSION UNDER TAX TITLE.  A new title being initiated by a tax sale, possession under such title, after expiration of the period of redemption and after issuance of a tax deed, is *prima facie*, at least, adverse to the original title, and not presumptively subordinate to it.[1]  ((Page 194.)

2. ADVERSE POSSESSION—COLOR OF TITLE.  Color of title is immaterial, as regards adverse possession, except for purpose of determining the extent of the possession.  (Page 195.)

3. ADVERSE POSSESSION—ACTUAL POSSESSION—FENCES.  As regards adverse possession, one has actual possession of all of a tract, by reason of inclosing it all with a lawful fence.  (Page 195.)

4. ADVERSE POSSESSION—ENTRY UNDER AGREEMENT FOR PURCHASE.  The possession of one who enters on land, under an arrangement for purchasing it from one having a tax deed of it, is adverse, as against all but his vendor, from time of entry, and not merely from the time he gets his deed.  (Page 195.)

5. ADVERSE POSSESSION—POSSESSION UNDER DEFECTIVE TITLE.  That a tax title is defective makes possession under it none the less adverse to the prior title.  (Page 196.)

6. ADVERSE POSSESSION—BEGINNING OF ADVERSE POSSESSION.  Even though when one entered on lands, of which the county had a tax deed, he had no agreement for purchasing them from the county, yet, he having immediately fenced them and commenced to improve them, and from then claimed to be their owner, and paid the taxes thereon, his adverse possession commenced then, and not merely when he obtained a deed from the county.  (Page 196.)

7. ADVERSE POSSESSION—INTERRUPTION—ACTION BY PERSON IN POSSESSION.  One in adverse possession does not arrest the running in his favor of the statute by commencing an action, under Comp. Laws 1907, sec. 3511, to quiet title in him; he, while, as is necessary, alleging that the defendant claims an estate or interest in the property adverse to him, not admitting his title, but alleging that her claim is baseless and without right; and she not appearing.  (Page 198.)

8. ADVERSE POSSESSION—INTERRUPTION—ACTION AGAINST PERSON IN POSSESSION.  While the running of the statute in favor of one

---

[1] Investment Co. v. Fox, 32 Utah, 301, 90 Pac. 564.

in adverse possession is arrested by the bringing against him of an action disputing his title, it is thereby arrested only for the purpose of that action, and not for any other action subsequently brought, though by the same person.   (Page '198.)

9. ADVERSE POSSESSION—INTERRUPTION—COMMENCEMENT OF ACTION —APPEARANCE OF NEW PARTY.   Where one in adverse possession, but before lapse of the seven years necessary for title, commenced action against S. to quiet title, and obtained a default judgment, and after lapse of the seven years B. came into the action, for his own benefit, as grantee of S., by application to vacate the judgment, on the ground that it was based on constructive service on S., and that she had not appeared in the action, the running of the statute in favor of plaintiff is not interrupted, as it would have been by the timely appearance of B. or his grantor.   (Page 201.)

10. QUIETING TITLE—PLEADING—SUPPLEMENTAL COMPLAINT.   As against one who, for his own benefit, comes into a pending action to quiet title, plaintiff may, by supplemental complaint, avail himself of his title by adverse possession, which became complete after he brought the action, but before such person came into it.   (Page 201.)

APPEAL from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by August Welner against Amanda Stearns and others.

Judgment for defendant.

Plaintiff appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

*G. M. Sullivan* for appellant.

*C. S. Patterson* for respondents.

APPELLANT'S POINTS.

The privity requisite to constitute continuous adverse possession by tacking the possession of the original entry-man to that of another may be effected by any conveyance,

agreement, or understanding that has for its object a transfer of possession and is accompanied by a transfer in fact. *Kepley v. Scully,* 185 Ill., 52; 57 N. E. 187; *Vandal v. St. Martin,* 42 Minn. 163; 44 N. W. 525; *Smith v. Chapin,* 31 Conn. 530; *Davock v. Nealon,* 58 N. J. L. 21; 32 Atl. 675.

A paper transfer evidencing a change of possession by succession is not necessary to blend the first possession into the second. The right of the person holding possession adversely may be transferred by parol. (*McNeely v. Langan,* 22 Ohio St. 32; *Weber v. Anderson,* 73 Ill. 439; *Menkans v. Blumenthal,* 27 Mo. 198; *Cunningham v. Patton,* 6 Pa. St. 355. See notes on pages 252, 253, 254, vol. 3, Kerr's Cyc. Code Cal.)

Where the real owner stands by and silently acquiesces in some other persons possessing, improving and paying taxes on his property under a claim of right, and under claim of another title, for a given number of years fixed by the statutes of the respective states, he thereby permits such title as he originally had in the premises to vanish and become vested in the adverse claimant; and this, whether possession has been continuous in one person, or whether it has passed through several persons; provided of course, each successive possessor held under an immediate former possessor, and not under the original owner. (*Murray v. Romine.* 60 Neb. 94, 82 N. W. 318; *Lantry v. Wolff* 49 Neb. 374, 68 N. W. 494; *Stettnische v. Lamb* 18 Neb. 619, 26 N. W. 374; *Rowland* et *al. v. Williams et al.,* 23 Ore. 515, 32 Pac. 402; *Graffus v. Tottenham,* 1 Watts & S. (Pa.) 488, 37 Am. Dec. 472; *Kilbourne v. Lockman,* 8 Iowa, 380; *Beal v. Brook's Ex'rs and Heirs,* 23 Am. Dec. (Ky.) 401; *Hanson v. Johnson,* 62 Md. 25, 50 Am. Rep. 199; *City of St. Paul v. Chicago, M. & St. Paul Ry. Co.,* 45 Minn. 387, 48 N. W. 17; *Sherin et al. v. Brackett* 36 Minn. 152, 30 N. W. 551.)

Actual occupancy, adverse under claim of title for a period prescribed by statute, bars right to recover, and gives absolute title. (*Arrington v. Liscomb,* 34 Cal. 365, 94 Am. Dec. 722; *Cannon v. Stockmon,* 36 Cal. 535, 95 Am. Dec. 205; *Mc-*

*Cormack v. Silsby,* 82 Cal. 72, 22 Pac. 874; *McGovern v. Mowry,* 91 Cal. 383, 27 Pac. 746; *Lara v. Sandal et ux.,* 100 Pac. 166; *Unger v. Mooney,* 63 Cal. 586 to 595, 49 Am. Rep. 100; *Wilhoit v. Tubbs,* 83 Cal. 279, 23 Pac. 386; *Christy v. Spring Valley W. W.,* 84 Cal. 541, 24 Pac. 307; *Baker v. Clark,* 128 Cal. 181, 60 Pac. 677.)

### RESPONDENT'S POINTS.

The date of the commencement of this suit, fixes the date at which the rights of the appellant are determined. (*Wadley v. Jones,* 55 Ga. 329; *Werth v. City of Springfield,* 22 Mo. App. 12; *Robinson v. Burleigh,* 5 N. H. 224; *Wattson v. Thibou,* 17 Abb. Pr. (N. Y.) 184; *Tappan v. Tappan,* 30 N. H. 50; *Hudson v. Burk,* 48 Mo. App. 314; *Garrigue v. Loescher,* 16 N. Y. Sup. Ct. 578; *Moreland v. Atchison,* 24 Tex. 164.)

The burden of proving the adverse possession for the full term of seven years is on him who asserts it, and the holder of the legal title will be conclusively presumed to have been in possession, if the claimant by adverse possession fails to establish his title. (*Needham v. Salt Lake City,* 7 Utah, 319, 26 Pac. 920; *Smith v. Water Company,* 16 Utah, 194, 52 Pac. 283; *Funk v. Anderson,* 22 Utah, 238, 61 Pac. 1006; *Dignan v. Nelson* 26 Utah, 186, 72 Pac. 186; *English v. Openshaw,* 28 Utah, 241, 78 Pac. 476.)

Where a party has declared that his possession was under a better title than his own, he cannot obtain a title under the statute of limitations until he has changed the character of his possession. (*Haffendorfer v. Gault,* 84 Ky. 124, 8 Ky. Law Rep. 4; *Lamb v. Foss,* 21 Me. 240; *Tomlinson v. Lynch,* 32 Mo. 160; *Roggencamp v. Converse,* 15 Neb. 105, 17 N. W. 361; *Satterwhite v. Rosser,* 61 Tex. 166; *Erskine v. North,* 14 Grat. 60.)

To render possession adverse, so as to set the statute in operation, it must be accompanied by a claim of title which must be asserted in good faith, and exclusively of any other right; and, where parties assert, either by declarations or conduct, the title to be in others, the statute can not run in their favor. (*McCracken v. San Francisco,* 16 Cal. 591.)

FRICK, C. J.

This is an appeal from a judgment or decree quieting the title to certain real estate in the respondent Peter Borg.

The action was originally commenced by appellant to determine adverse claims to real estate, and was based on Comp. Laws 1907, sec. 3511, which provides:

"An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim."

The pleadings, motions, and affidavits in support thereof cover nearly sixty pages of the printed abstract, and by reason of their volume it is impracticable to make even a condensed statement of the contents thereof. We shall, however, in the course of this opinion, state so much of the material issues and proceedings as may be deemed necessary to a full understanding of the decision.

The facts, in substance, are as follows: The property in dispute comprises a number of small lots situated in one of the additions to Salt Lake City. The lots were low and wet, and in their natural state were undesirable, if not wholly unfit, for residence property, cultivation, or use. The respondent Amanda Stearns (whose true name is Almanda, and will be so styled hereafter) held the legal or paper title to the lots, and, so far as appears, never was in actual occupancy thereof. In 1891 or 1892 she ceased to pay taxes on the lots, and they were sold to Salt Lake County for the unpaid taxes for the years of 1892 and 1893. After the four-year redemption period had elapsed, and Almanda Stearns had failed and neglected to redeem the lots from the tax sale, a tax deed, which purported to convey them to Salt Lake County, was duly issued, and delivered to it, in August, 1898. The undisputed evidence shows that in the spring of 1899 appellant took actual possession of all of the lots in controversy. (The court found that he took possession in July, 1899.) Immediately after taking possession of the lots in controversy, appellant, in conjunction with an adjoining neighbor, inclosed

all of the lots with a lawful fence, which he thereafter maintained. He, at about the same time, also constructed some drainage ditches along a portion of the lots, and moved his chicken house from his own lot to one of the lots in question. After going into possession, he cultivated portions of the lots, and, from year to year, prepared other portions for cultivation, and cultivated them, and planted trees and shrubbery on some of the lots. In the spring of 1900, appellant constructed further drainage canals or ditches along other portions of the lots, not reached by the ditches he had constructed in the spring of 1899, and connected such ditches with the public drainage ditches or canals. In short, the appellant, during all of the time since he first took possession of the lots up to the time of the trial of this case, cultivated them, used and treated them, as any owner treats his property, and claimed them as his own. After appellant had gone into possession, as aforesaid, and before the county delivered a deed to him, be paid to it all of the taxes, including costs that had accrued, against the lots, and which had remained unpaid, commencing with the year 1891 or 1892 and up to and including the year 1898, the year when the tax deed was issued to Salt Lake County, and, in consideration of the payment of the taxes and costs, Salt Lake County, in May, 1900, made and delivered a deed conveying the property to him. Appellant contends that he went into possession, as the successor of Salt Lake County, under a parol agreement or understanding with it; that he is thus entitled to tack his possession to the possession of the county, which it surrendered to him. Appellant's counsel contends that under the law as declared by the courts appellant's possession was a mere continuation of the possession of the county, and that the two possessions could be connected by parol, or any arrangement entered into between the county and appellant. (*Kepley v. Scully,* 185 Ill. 52, 57 N. E. 187; *Vandall v. St. Martin,* 42 Minn. 163, 44 N. W. 525; *McNeely v. Langan,* 22 Ohio St. 32.)

Upon the other hand, Borg's counsel strenuously insists that the evidence does not support counsel's claim, as afore-

said, but that the evidence is to the effect that the county never had actual possession, nor surrendered any, nor ever made any arrangement with respect to that matter with appellant. We shall refer to this phase of the case again in the course of the opinion.

After appellant had taken possession of the lots and paid the taxes, as aforesaid, he, in November, 1903, commenced an action against "Amanda" Stearns, as a nonresident of the state of Utah, under section 3511, *supra*. In his complaint, after alleging in general terms that he was the owner and in possession of the property in question, he alleged, among other things, that "said defendant claims an estate or interest therein (the property in question) adverse to said plaintiff; that the claim of said defendant is without any right whatever; and that the said defendant has not any estate, right, title, or interest whatsoever in said land or premises, or any part thereof." Appellant filed the necessary affidavit to obtain service by publication, upon the -ground that "Amanda" Stearns was a nonresident of the state of Utah and absent therefrom, and that she could not be served with process within the state. An order for service by publication was duly made, and the summons was duly published. Nothing further was done in said action until the 22d day of November, 1906, at which time the district court of Salt Lake County duly entered a decree quieting the title to the lots in question in appellant. On the 18th day of December, 1906, the respondent "Amanda" Stearns, with her husband, executed a quitclaim deed to respondent Addison Cain, releasing to him any interest she might have in the lots in question for the alleged consideration of "one dollar." On the 17th day of January, 1907, said Addison Cain and his wife, by warranty deed, duly conveyed to the respondent Peter Borg all of the lots in dispute.

On January 29, 1907, said Borg commenced an action in the district court of Salt Lake County against appellant, in which said Borg claimed to be the owner of the property in question, and asked that the title thereof be quieted in him. Appellant filed his answer in said action, in which he claimed

to be the owner of the property, and further set forth the decree in his favor, quieting the title in him, as an estoppel. After this answer was filed, the respondent Borg dismissed his said action, and, on February 25, 1907, filed an application in appellant's action, under Comp. Laws 1907, sec. 3005, to set aside the decree quieting the title to the lots in question in appellant, upon the ground that said decree was based on constructive service merely, and that he believed that said "Amanda" Stearns had had no actual notice of the pendency of the action, and that a year had not elapsed since the entering of the decree therein. The court set aside the decree upon said application, and, in what is called an answer," Borg denied appellant's ownership of the property, and averred that he (said Borg) was the owner thereof, and asked that the title thereto be quieted in him, the same as he had prayed in the action which he had therefore dismissed. After these proceedings were had, appellant, on the 8th day of March, 1910, filed what he called a "complaint," in which he made the respondents Addison Cain and Frances L. Cain and Mary L. Borg parties. These three parties came into the case by stipulation, and, as their presence is immaterial, we shall not refer to them hereafter. In said complaint appellant set forth that he was the owner of the lots in question by virtue of having acquired title thereto by adverse possession and the payment of taxes, under the provisions of Comp. Laws 1907, sec. 2866. Appellant at the same time filed what he designated an "answer" and "supplemental complaint" against the respondent Borg. In said answer appellant denied Borg's claim of title, and in the supplemental complaint he again, at great length, set forth his claim of title to the lots in question by adverse possession and the payment of taxes. Borg filed an answer to the supplemental complaint, and also filed what he termed a "counterclaim" thereto. In the answer he denied appellant's ownership, averred that he was the owner of the lots, and in his counterclaim he asked judgment for the annual rental of the property, which he alleged was of the value of twenty dollars

per year during all of the time that appellant had been in possession thereof.

It will thus be seen that appellant's claim that he was the owner of, and that he had acquired title to, the lots in question by adverse possession was pleaded over and over again, while the respondent Borg, after he came into the action in February, 1907, in his pleadings just as often denied appellant's ownership, and averred title in himself. It seems that the case finally came on for trial, and was tried upon the pleadings last referred to, on May 23, 1910, and on the 5th day of July, 1911, the court filed his findings and conclusions and entered a final decree quieting the title to the lots in question in the respondent Peter Borg, and also disposed of the other issues, which, in view of our conclusions, are not material.

Appellant's principal assignments of error relate to the findings of fact and conclusions of law which refer to or cover the question of adverse possession. Counsel for appellant, in substance, vigorously contend that, under the undisputed evidence, the court erred in not finding that appellant had acquired title to the lots in question by adverse possession, and that the decree in favor of respondent Borg is contrary to law. In our judgment, the whole question hinges upon whether the appellant had acquired title to the lots in controversy by adverse possession. While, as we have already said, the possession and payment of taxes by appellant are not disputed, yet Borg's counsel contends that appellant was not in adverse possession for the time required by our statute to acquire title to the lots in question, for two reasons: (1) Because appellant's possession did not become adverse until May, 1900, when he obtained his deed from Salt Lake County; and (2) that although it be conceded that appellant's possession was adverse from its inception in the spring of 1899, yet the running of the statute in his favor was arrested in November, 1903, when he commenced the original action against "Amanda" Stearns to quiet the title to the lots in question.

Referring to the first propesition, we are clearly of the opinion that appellant's possession, as against the respondent Almanda Stearns and all those who claim through or under her, was adverse from its inception. The county had obtained a tax deed as early as August, 1898. The county's tax title, although defective, was in no way related to or based upon the title of Almanda Stearns.

Under our statute, as under most of the state statutes of the Union, the tax sale initiaties a new title, and has no relation with the previous chain of title. 37 Cyc. 1473. When the period of redemption had expired and the tax deed had issued, the county thereafter held under a new title, and any possession that was taken by virtue of such new title was, *prima facie* at least, adverse to the original title. This is clearly the logic of the decision of this court, in *Investment Co. v. Fox*, 32 Utah, 301, 90 Pac. 564, 13 L. R. A. (N. S.) 627, 125 Am. St. Rep. 865, and the cases there referred to. In view, therefore, that by the tax deed a new title was created, there can be no presumption that the possession of appellant was in subordination of Almanda Stearns' title. This presumption was fully met and destroyed by reason of the foregoing circumstances. But, in view of the uncontradicted evidence, which was elicited more clearly upon cross-examination of appellant by Borg's counsel, it is also clear that appellant took possession of the property and claimed it as his own from the time he took such possession. This is made apparent from the following questions and answers:

"Q. And you were looking for a chance to buy the land from the county? A. Yes. Q. You didn't make any claim of ownership to the land until you got your deed from the county? A. I did, too, because after I had talked to the commissioners I took possession of it, so as to hold it, so when the auction came off, when it was going to be sold at auction, I had a claim to hold just that piece. Q. Then, at the time you first went into possession there, you were claiming that property, were you? You claimed it then, did you? A. To some extent. Q. And claimed it before you got your deed? A. Yes, sir."

Borg's counsel, however, asserts that, because appellant did not obtain his deed from the county until May, 1900, there-

fore he did not have color of title until that time. This contention is answered by the fact that color of title, under our statute, is immaterial, except for the purpose of determining the extent of the possession. In this case appellant immediately inclosed the lots with a lawful fence, and **2, 3, 4** hence had what in law is termed *"possessio pedis"*; that is, actual possession of all the lots. Counsel, however, further contends that, although appellant took possession in July, 1899, yet, as he did not obtain his deed from the county until May, 1900, his possession was not adverse until the delivery of the deed to him. If we shall assume the fact to be as counsel for appellant contends, that in the spring of 1899, under some agreement or understanding of purchase with the county, appellant went into possession, and that, in pursuance of such agreement, the county, in May, 1900, made and delivered to him a deed for the lots, then, in view of the evidence relating to the character of appellant's possession, it was adverse from its inception. In 1 Cyc. 1049, the law is stated thus:

"One entering under an executory contract of purchase may, and generally does, hold adversely as against all persons except his vendor."

Under such circumstances, therefore, although a deed is not made and delivered until a later date, yet the right to claim adversely may, and ordinarily does, relate back to the time possession was actually taken. In *Howland v. Newark, etc., Ass'n.* 66 Barb. (N. Y.) at page 367, the rule is stated in the following words:

"But it is well settled that the possession of a party who enters under an executory contract to purchase, and subsequently obtains his deed in pursuance of the contract, is adverse, from the time of the entry, as to all the world except the vendor."

In the case at bar, as we have seen, the county claimed title under a tax deed, and hence claimed from a source other than that through which the respondent Borg claims. For the purpose of meeting the presumption that appellant took and remained in possession in subordination of the paper

title, it is immaterial that the tax deed was defective, and did not in law convey an indefeasible title. Appellant's possession was just as much adverse to Borg's title, although the deed was defective, as it would have been if the deed had conveyed a perfect title; the only difference being that under a deed which is defective the claimant in possession must obtain the title, if he obtains it at all, by virtue of the statute, while if the deed is good, and conveys an indefeasible title, the title is in him from the time the deed is delivered.

Let us assume, however, that the contention of Borg's counsel is the correct one, namely, that there was no agreement of purchase or any understanding between the county and appellant, pursuant to which he went into possession, and that he did not take possession in pursuance of any contract or agreement of any kind with the county. And, further, that the county could not legally authorize him to go into or take possession of the lots. The fact that appellant went into actual possession, and immediately after doing so fenced the lots and commenced to improve them, is not, and under the evidence cannot, successfully be disputed. Further, that from the time he went into possession he also claimed to be the owner of the lots is also established by the undisputed evidence. In view of the facts, therefore, appellant was in adverse and hostile possession, under claim of ownership, as against the whole world, including the county. Let us assume that after appellant went into possession he, for a period of seven years, had treated the property just as the evidence discloses he did—that is, had fenced, improved, cultivated and used it as his own, and had paid the taxes thereon for a period of seven years— could the county have successfully assailed his possession as not having been adverse and hostile to it from the inception? We are clearly of the opinion that under the undisputed evidence such a contention on the part of the county could not prevail. If the county failed or neglected to make and deliver a deed to appellant, his possession was still adverse and hostile to it; and the mere fact that a deed was subsequently made and de-

livered, if it amounts to anything, in view of the evidence
in this case, is some evidence showing recognition of the fact
that appellant's possession was under a claim of ownership
from the time he went into possession in the spring or early
summer of 1899. It was this possession, taken and main-
tained as it was, and the payment of the taxes, that prevents
Borg from successfully assailing appellant's title.

The law is well stated by the Supreme Court of Illinois,
in *Weber v. Anderson,* 73 Ill., at page 442, in the following
language:

"It is the possession that bars the owner of a recovery. If the
owner permits the occupation of his land for a period of twenty
years by a party asserting ownership, he is barred by the statute
from making an entry or bringing an action to regain posses-
sion."

Under our statute, the time is but seven years, but, as evi-
dence of the claim of ownership, the party claim-
ing title by adverse possession must also have paid the
taxes during the period of time that possession is required by
the statute. Under the undisputed facts, appellant not only
paid all the taxes assessed against the lots in question from
the spring of 1899 up to and including the year 1908, but he
had paid all the taxes, commencing with the year 1891 or
1892, which Almanda Stearns, the then owner (and to whose
title Borg claims to have succeeded), failed to pay. That
Almanda Stearns, for such a long period of time, had failed
to pay any of the taxes raised a reasonable inference that she
had abandoned the property. By this we do not mean that she
thereby would have forfeited her title, but what we do mean
is that she apparently paid no further attention to the prop-
erty. When, therefore, Borg, in February, 1907, came into
this case to assert title, the appellant had paid all the taxes
that had been assessed against the lots for a period of seven-
teen or eighteen years, and had been in actual and exclusive
possession thereof, improving and using them, under claim
of ownership, for a period of more than seven years. If pos-
session can ever be hostile and adverse to the claimant of
paper title, then it seems to us that, under the evidence in this

case, appellant's possession was so, and that, unless the judgment or decree can be supported upon some other ground, it must fail.

Referring now to the second proposition, namely, What was the legal effect of the pendency of the action that appellant commenced in November, 1903, to quiet the title to the lots in question in himself? Counsel for Borg strenuously insists that in commencing **7, 8** the action appellant arrested the running of the statute in his favor. There can be no doubt that if Almanda Stearns or her grantee had commenced an action against appellant in 1903, or at any other time before seven full years had elapsed from the time he took possession of the lots in question, under the circumstances stated, the running of the statute would have been arrested. By the bringing of an action to recover the property, the adverse claimant of the title, no doubt, would have effectively disputed the title or ownership of the one in possession, and thus the running of the statute would be arrested in favor of the one in possession. Is it not pertinent to ask, however, In what way was appellant's claim of ownership disputed or questioned when he commenced the action in November, 1903? Borg's cousel, at the hearing of this case, argued that, because appellant in his complaint to quiet the title to the lots had alleged that Almanda Stearns claimed some estate or right in or to the same, therefore he admitted her title. Counsel overlooks the important fact that by what appellant pleaded he did not admit that Almanda Streans had any claim or interest in fact, but he merely alleged that she claimed to have an estate or right or interest in the lots. Appellant, however, immediately after making the foregoing statements, also alleged that her claim was baseless and without right. How can it successfully be claimed that in view of these allegations appellant conceded or admitted any outstanding title, estate, right, or interest in any one? If counsel's contentions are sound, then no claimant who commences an action to determine adverse claims can state a cause of action under section 3511, *supra*. It is certainly indisputable that in order

to invoke the aid of the court appellant had to allege that some one claimed title or some interest or estate in the lots adverse to him. If there was no one asserting any title or interest adverse to appellant, why bring an action? It is clear that by what appellant alleged he did not admit or concede any estate or right in the former owner of the title, or in any one else.

In view of the foregoing, how could appellant arrest the running of the statute in his favor by commencing the action? We confess our inability to understand how the bringing of an action by appellant, without any appearance by the defendant or any claim adverse to his rights, could have such effect. No doubt, if, after inviting Almanda Stearns into court, she had appeared in the action, and had disputed appellant's title, the running of the statute, for the purpose of that action at least, would have been arrested. It is not true that the commencement of an action, under all circumstances, arrests the running of the statute of limitations It is settled law that in case new parties are brought into a pending action as defendants the statute of limitations runs in their favor up to the time they are brought into the case. 25 Cyc. 1302. Under some conditions, and in the absence of statutory regulations, it has been held that the statute runs even in favor of parties defendant until they are served with process in the action. 25 Cyc. 1296. This question is, however, not involved here, and we refer to it only for comparison and express no opinion upon it. Nor does the statute cease to run, except for the purposes of the particular action, and, unless there is a special statute saving the right to bring a new action in case a pending action fails, or is dismissed otherwise than upon merits, no new action can be maintained, if the statutory period of limitations had fully run, pending the action which had so failed or been dismissed.

That an action, even though commenced by the adverse party, does not arrest the running of the statute, except for the purposes of that action is well illustrated by the Supreme Court of Tennessee, in the case of *Hopkins v. Calloway*, 47 Tenn. (7 Cold.) 48. In that case an action for the recovery

of certain real property was commenced against the claimant in possession by the claimant out of possession, and afterwards, while the first action was still pending, an independent action to recover the same property was commenced in equity. In the latter action, the plea of the statute of limitations was interposed, and this plea was sught to be met by the claim that the pendency of the former action arrested the running of the statute in favor of the one in possession. The court, however, held that the latter was an independent action, and that the defendant in that action could avail himself of the plea of the statute of limitations, notwithstanding the fact that another action had been commenced and was pending.

The rule is clearly stated by the author of Wood on Limitation of Actions (section 272) in the following words:

"Although the adverse possession of a defendant in ejectment cannot, during the pendency of the suit, ripen into an absolute title under the operation of the statute of limitations, yet the effect of the statute is neutralized only in respect to the particular suit and the plaintiff therein. And, after the termination of that suit, the statutory limitation having meanwhile expired, no subsequent action can be brought, either at law or in equity, to question that title or possession; and if the plaintiff fails therein, the period during which the action was pending is not deducted from the period requisite to gain a title by possession."

This principle is frequently applied in our own counts. Suppose a cause of action accrues on a promissory note on one day, and an action is commenced to enforce payment thereof on the next day. Suppose, further, that the action remains pending and undisposed of for the full period of the statute of limitations, and then fails or is dismissed otherwise than on merits. Would any one contend that, in case another action was commmenced on the same note, the defendant could not successfully avail himself of the statute of limitations, in case the latter action was not commenced within a year from the time the first action failed, or was dismissed, as provided in Comp. Laws 1907, sec. 2893? And would any one further contend that if it were not for that section the plaintiff, under the foregoing circumstances, could successfully maintain a new action, in case the defendant pleaded the statute of lim-

itations? It is manifest, therefore, that the commencement of an action, although commenced against an adverse party, does not arrest the running of the statute, even as against such a party, except for the purposes of the particular proceeding that is pending. Where, however, as in the case here, the action is commenced by the party who subsequently pleads the bar, we cannot see how the statute of limitations can be arrested, as against him, by the bringing of an action. Under the undisputed facts of this case, the appellant went into possession of the property in question some time before July, 1899, and thereafter remained in open, continuous, exclusive, and adverse possession up to January, 1907, when Borg commenced his action against appellant for the recovery of the property in question. Appellant did not only make improvements on the property and pay all the taxes assessed against it during all of that time, but he paid all the taxes assessed against it, and which Almanda Stearns should have paid, commencing with the year 1891 or 1892. Almanda Stearns had then failed to pay any taxes on the property, and had apparently abandoned it for a period of seventeen or eighteen years, when she purported to convey it to Addison Cain. The responent Borg, who is the grantee of Cain, stands in no better plight than either Cain or Almanda Stearns would stand. Appellant had thus been in continuous adverse possession of the lots in question for a period exceeding the time required by our statute, namely, seven years, and had fully complied with all of its provisions, and was therefore entitled to claim the title to the lots by virtue of the statute, when Borg brought his action to oust appellant, which was the first time any one disputed his title or ownership since he first went into possession in the spring or summer of 1899.

It is, however, vigorously contended by Borg's counsel that the appellant must recover upon a cause of action that existed when he commenced his action, and upon the cause of action stated in his complaint. Such, no doubt, is the general rule which is constantly enforced by the courts. There are circumstances, however, where the parties, by supplemental pleadings, may set up matters occurring

or arising after the commencement of the action, and in that
way may protect rights that could not have been protected
under the original pleadings.  In formulating the issues upon
which this case was finally tried, and upon which the findings
are based, this case is not only peculiar, but may be said to be
exceptional.  It is true that when appellant set up the judg-
ment, quieting the title to the lots in question in himself, as
a defense to the action commenced by Borg, that Borg then dis-
missed his action and made his application to set aside the
judgment that appellant had obtained.  Borg's application
was, however, based upon the sole ground that appellant's
judgment was based upon constructive service upon Almanda
Stearns, under whom Borg claimed, and that she had not ap-
peared in the action.    For the sole reason that Borg made the
foregoing application to vacate appellant's judgment, rather
than to prosecute an independent action, his counsel assumes
that under the law Borg's rights are the same as though he or
his grantor had made a timely appearance in appellant's
action, and had thus disputed his title. ' We cannot agree
with this contention.  We think that, so far as Borg is con-
cerned, he must stand or fall by what rights he could legally
establish to the lots in question in February, 1907—the time
when he filed his application to set aside the judgment which
had been entered in favor of appellant.  While it is true
that Borg had disputed appellant's title to the property in
his action commenced in January, 1907, yet that action was
dismissed; and hence, under the rule to which we have here-
inbefore referred, the statute continued to run against him
until he made his subsequent application in the following Feb-
ruary.   This case was not tried upon the allegations and
pleadings filed by appellant in 1903, and under which he
obtained his judgment.  It was in fact tried, and the findings
of the court are based upon the supplemental complaint filed
by appellant in March, 1910, and upon Borg's original
answer and his answer to appellant's supplemental answer
and Borg's counterclaim.  While appellant cannot avail him-
self of the time that had elapsed after February, 1907, when
Borg made his application in which he disputed appellant's

title, yet appellant, for the reasons already stated, by filing a supplemental complaint, could avail himself of the time that had elapsed between the time he went into possession in 1899 and the time when Borg first disputed appellant's title in February, 1907. What the legal status of the case would be if appellant had in fact tried the case upon the original complaint is of no importance now, since he did not do so, but relied upon the allegations of adverse possession contained in his supplemental complaint. We can see no good reason for permitting a defendant to avail himself of the running of the statute in his favor until he is made a party to a pending action, but to deny a plaintiff the right to do so in a case like this, where the defendant asks to be made a party to a pending action years after it was commenced. If a defendant who is brought into a pending action may claim the benefit of the time that intervened between the commencement of the action and the date on which he was made a party, why may not the plaintiff, for his protection, also be allowed to invoke the aid of the statute as against a defendant who comes into a pending action years after it was commenced, and where his coming into the action is for his own benefit? We think he may.

It must not be overlooked that this is not a case of mere transfer of interest and substituting of parties defendant. Almanda Stearns was in default for years, if the action was in fact pending against her; and if no action was pending against her none was pending at all. Borg never was a party to the action until February, 1907. Taking either horn of the dilemma, therefore, we cannot see how Borg can successfully contend that the statute of limitations did not run against him. Counsel have not been able to find any case directly in point, and after a most diligent search we have been unable to do so. We are firmly convinced, however, that, both in reason and upon principle, the appellant, under the undisputed facts, should prevail in this case. Our statute relating to adverse possession should be given a fair and reasonable application by the courts. In applying the statute, courts should aim to protect the substantial rights of all of

the parties interested in the subject of the action, and where the statutory time has fully elapsed, and the claimant in possession has complied with the provisions of the statute, the title to the property is vested in him, the same as though he had the most formal title deed. In this case the question is not one of dispute or conflicting facts. In our judgment, the trial court erred in his application of the law to the undisputed facts. Under such circumstances, we have quite as good an opportunity to determine the result as had the trial court. In our judgment, the findings of fact, conclusions of law, and decree are clearly against both the law and the evidence.

The findings of fact, conclusions of law, and judgment are therefore vacated, set aside, and reversed. The cause is remanded to the district court, with directions to make findings of fact and conclusions of law in accordance with the views expressed in this opinion, and to enter a decree quieting the title to the lots in dispute in appellant. Respondent Borg to pay costs.

McCARTY and STRAUP, JJ., concur.