Lincoln CHAPIN, Jr., and Donald E. Chapin,
Plaintiffs and Respondents,

v.

Edwin LETCHER, John Letcher, Phillip
Letcher, Daniel Letcher, Margaret Peter-
son, William Stoughton, Myron Stoughton,
Mildred Stafne, Winnifred Dewhirst, Myr-
tle Jore, Rosemary Fox, Olaus Hasby, also
known as Ole Hasby, Olaus J. Hasby, and
as O. J. Hasby; Phillip Fellman, Marjorie
Harbough, Edward Fellman; the unknown
heirs, creditors, or devisees of M. W. Has-
by, also known as Margrate W. Hasby,
and as Margareth W. Hasby, deceased;
the unknown heirs, creditors or devisees of
Celia Fellman, deceased; McKenzie Coun-
ty, North Dakota, a public corporation, and
political subdivision of the State of North
Dakota; and all other persons, unknown,
claiming any estate in, or lien or encum-
brance upon the real property described in
the complaint, Defendants and Appellants.

No. 7731.

Supreme Court of North Dakota.

Dec. 2, 1958.

Bjella, Jestrab & Neff, Williston, for appellants Phillip Fellman, Edward Fellman, and Marjorie Harbough.

John F. Mullaney, Watford City, for appellants Edwin Letcher, William Stoughton, Myron Stoughton, Mildred Stafne, Rosemary Fox, Winnifred Dewhirst, Olaus Hasby, Myrtle Jore, Daniel Letcher, Margaret Peterson, John Letcher, and Phillip Letcher.

Burk & O'Connell, Williston, for respondents.

Cox, Pearce & Engebretson, Bismarck, amicus curiae.

GRIMSON, Chief Justice.

This is an action to quiet title to Lots 3 and 4 of Section 4, and the South Half (S½) of the Northeast Quarter (NE¼), and Lots One (1) and Two (2) of Section Five (5), in Township One Hundred Fifty-one (151) North, Range 95, West of the 5th. Principal Meridian.

It appears that the patent to this land was issued by the United States to Olaus J. Hasby on Jan. 21, 1919. Later he married a widow, mother of seven children, by the name of Margareth W. Letcher. On March 8, 1922, Olaus J. Hasby issued a warranty deed to said property to his wife, Margareth W. Hasby, otherwise known as Margrate W. Hasby and M. W. Hasby. She died intestate on Dec. 1, 1927, leaving as her heirs, her husband, Olaus J. Hasby, otherwise known as Ole Hasby and O. J. Hasby, and her sons Edwin Letcher, John Letcher, Phillip Letcher, Daniel Letcher, and her daughters, Margaret Peterson and Mary Stoughton; and Phillip Fellman, Edward Fellman, and Marjorie Harbough, the children of a predeceased daughter, Celia Fellman.

The plaintiffs claim to be the owners of such real estate by purchase and adverse possession and to be entitled to possession. They ask to have title quieted in them. The various defendants deny plaintiffs' claims and some of them allege ownership of an interest therein as heirs of Margareth W. Hasby. Plaintiffs deny those claims and set up as defenses against those defendants a decree of heirship, deeds from some of the heirs and adverse possession of the premises. The court decided for the plaintiffs. Defendants appeal and demand a trial de novo.

The evidence shows that on Dec. 10, 1929, after Mrs. Hasby's death, the lands involved were sold for non-payment of taxes. No redemption was made. The title passed to McKenzie County by two tax deeds, dated Oct. 1, 1940, each applying to different areas thereof. On April 6, 1944, the Board of County Commissioners of McKenzie County received an offer of $771 for the premises involved. The county auditor on April 8, 1944, notified Margareth W. Hasby at Watford City, North Dakota, by registered mail that the county had received an offer for the purchase of the premises, and that unless redemption is made within thirty days by paying in full the delinquent taxes, penalty and interest amounting to $334.37, the land would be sold. Sec. 57–2818, NDRC 1943.

That notice was received by Mrs. Hasby's daughter, Mary Stoughton. Upon receipt of that notice she and her brother, Edwin Letcher, made an agreement with Lincoln L. Chapin that he redeem the land for the heirs of Margareth W. Hasby and that they would then sell to him their share as her heirs in the land redeemed. Confirming that agreement Edwin Letcher and his wife, and Mary Stoughton executed a power of attorney on the 3rd day of May 1944, to Lincoln L. Chapin, constituting and appointing him as their true and lawful attorney for them and in their name, place and stead to pay any and all taxes and

make redemption or repurchase of the land in question. They set forth their rights as heirs and members of the family of Margareth W. Hasby, and they granted him full authority to perform each and every act necessary to be done in the premises as fully as they might or could do if personally present, ratifying and confirming all his lawful acts done by virtue of the power of attorney. To complete the agreement, Edwin Letcher and Mary Letcher, his wife, and Mary Stoughton and Ole Hasby executed separate deeds to Lincoln L. Chapin for their interest in said property.

That same day Lincoln L. Chapin, as attorney for the heirs-at-law of Margareth W. Hasby, submitted to the Board of County Commissioners of McKenzie County, an offer of "the sum of $334.37 for the repurchase of the following described land (the land here involved), such repurchase is made as attorney for the heirs of Margareth W. Hasby, the former owner of this land. A power of attorney from the heirs is attached hereto."

The next day, May 4, 1944, the Commissioners accepted that offer, Mr. Lincoln L. Chapin paid the $334.37 and got a receipt therefor. The county thereupon issued a deed to Margareth W. Hasby. That deed was of no effect since Margareth W. Hasby was then dead and her heirs had succeeded to her interest in the land. Although their title was lost while McKenzie County had the tax deed to the land, the acceptance by the county of the money for the redemption or repurchase of the property re-invested the heirs with the title to that property.

On May 5, 1944, Lincoln L. Chapin filed the deed to Margareth W. Hasby, and it was duly recorded. Lincoln L. Chapin, himself, had no right to redeem this property but as agent for the heirs he furnished the money to do that and to secure the restoration of the title to the heirs.

That of itself, however, gave him no interest in the property.

In Frandson v. Casey, N.D., 73 N.W.2d 436, 438, we held:

"Where a person who has no right to redeem or repurchase under Sections 57–2818, NDRC 1943, or 57–2819, NDRC 1953, Supp., furnishes the money to redeem or repurchase land forfeited to the county for taxes, and the evidence discloses that such redemption or repurchase was made for the benefit of the estate of a deceased person, who held the record title prior to the tax forfeiture, the acceptance of the money tendered for the redemption or repurchase in accordance with the thirty day notice provided by the statute, reinvests the heirs of said deceased with the title to the land held by them as tenants in common upon the decease of their ancestor, and the issuance of a deed by the county subsequent thereto is but a ministerial act, and the issuance of the deed evidencing the redemption or repurchase in the name of the deceased owner does not affect the tenancy in common of the heirs of said deceased created by the acceptance of the money required to redeem or repurchase from the county."

In the case at bar the deed to Margareth W. Hasby, therefore, reinvests the heirs with their respective interests in the land. Of these interests Mary Stoughton and Edwin Letcher and Ole Hasby had deeded their interests to Lincoln L. Chapin, which deeds he filed after the county deed was issued, and at the time it was recorded. He had finished his duties as attorney in fact for Mrs. Stoughton and Edwin Letcher by making the repurchase of the property for the heirs and on recording the deeds to him he became the cotenant of the other heirs of Margareth W. Hasby.

Some of the appellants question the sufficiency of the three deeds to Lincoln

L. Chapin because they were signed the day before the repurchase of the land was made and the county deed to Margareth W. Hasby executed. It is claimed that those deeds passed no title being executed the day before the repurchase gave those heirs any interest in the property. Mary Stoughton and Edwin Letcher, however, at the time the agreement was made had the right to redeem or repurchase that property as the heirs of Margareth W. Hasby and in their behalf. The use of that right was included in the arrangements which resulted in the repurchase of the property and the restoration of the title to that land to the heirs.

It is clear that the exercise of the redemption and the sale of their interests in the land was all one deal. The circumstances surrounding the agreement show that it was the intention of the parties that those deeds would become effective on the issuance of the county deed to Margareth W. Hasby. The deeds then transferred the interest of Mary Stoughton, Edwin Letcher and Ole Hasby in the land. Connery v. Brocke, 73 Pa. 80.

In connection with these proceedings and in order to clear the record title of the land in question, Mary Stoughton petitioned in county court for a decree of heirship in the matter of the Estate of Margareth W. Hasby. A decree of heirship was issued on August 1, 1945, and recorded in the office of the Register of Deeds for McKenzie County, on August 20, 1945. It recited that the petition came on "regularly to be heard, and it having been shown to the satisfaction of this court that due and legal notice of the hearing of said petition, by citation, as required by law, has been duly given" and that all of the respondents defaulted. That decree established the heirs of the property of Margareth W. Hasby as Edwin Letcher, John Letcher, Phillip Letcher, Daniel Letcher, Mrs. Margaret Peterson and Mary Stoughton, an undivided one-sixth interest each. Sec. 30–2211, RCND 1943. No appeal was taken.

This decree is questioned by some of the appellants. However, even if it should be found invalid it operates as color of title for the heirs of the real property of Margareth W. Hasby. In Smith v. Nyreen, N.D., 81 N.W.2d 769, this court held that the final decree of distribution by the county court which professed to pass title to the different heirs, was color of title even if the proceedings on which it was based should be found invalid. See also 1 Am.Jur. Adverse Possession, Sections 190 and 196, pages 898, 901. That same principle applies to a decree of heirship.

Lincoln L. Chapin proceeded to get deeds from the rest of the heirs. He got a deed from Phillip Letcher, and Elsie, his wife, on May 8, 1944, from John Letcher and Daniel Letcher on August 15, 1944, and from Margaret Peterson on August 29, 1944. No question is raised as to the validity of those deeds. Those heirs thereby granted to Lincoln L. Chapin, forever, all their right, title and interest in said land which they inherited from Margareth W. Hasby. Hull v. Rolfsrud, N.D., 65 N.W.2d 94. Ole Hasby, and Phillip Fellman, Marjorie Harbough and Edward Fellman, children of predeceased Celia Fellman, hereinafter referred to as the Fellmans, were the only heirs not included in the decree of heirship. Ole Hasby gave a quitclaim deed to Lincoln L. Chapin. The Fellmans were the only defendants from whom Lincoln L. Chapin had not obtained deeds. He claims their title by adverse possession.

The Fellmans claim that they had no actual notice of those proceedings nor of the plaintiffs' claim of ownership. They maintain they still own the share of the property of their grandmother, Margareth W. Hasby, which they would have inherited through their mother, Celia Fellman. They contend that the proceedings in regard to the power of attorney and the decree of heirship created a constructive trust of the land involved for the benefit of all the heirs with Lincoln L. Chapin as the involuntary trustee, and that as such trustee he could not obtain title

to the premises against them by adverse possession.

"A constructive trust * * * is a trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience either has obtained or holds the legal right to property which he ought not in equity and good conscience hold and enjoy." 54 Am.Jur. Constructive Trusts, Section 218, pp. 167, 168.

Lincoln L. Chapin was not an heir of Mrs. Hasby. There was no confidential relationship established between the heirs and Lincoln L. Chapin. The power of attorney given him by Mary Stoughton and Edwin Letcher merely constituted him an agent for the two of them and in their place to redeem or repurchase the land in question for the heirs of Margareth W. Hasby, People v. Smith, 112 Mich. 192, 17 N.W. 466, 57 Am.St.Rep. 392; Mullins v. Commonwealth, 179 Ky. 71, 200 S.W. 9, 11. It gave no power or authority over the land. When he had made that redemption and secured deed in the name of Margareth W. Hasby, which returned the title to her heirs in common, his authority was terminated. He had no agreement with and no responsibility to any of the heirs. 2 Am.Jur. Agency, Sec. 56, p. 50; Mutual Reserve Life Ass'n v. Boyer, 62 Kan. 31, 61 P. 386, 50 A.L.R. 538. Any dealings he had with the heirs after that did not involve any trust relations.

Neither does the evidence show any fraud by Mary Stoughton or Lincoln L. Chapin in connection with the decree of heirship. There is no showing that Lincoln L. Chapin knew who the heirs were. It is true that the Fellman children were not mentioned in the heirship proceedings but there is no evidence that that was done in-

tentionally. The Fellmans had always lived many miles away from their relatives. Mary Stoughton may not have known that any more distant relatives were entitled to share in the estate. The proceedings show that she was not well advised in the preparation of the heirship proceedings. There is nothing in the record to warrant the inference that Mary Stoughton acted surreptitiously, secretly or furtively regarding either the power of attorney or the decree of heirship. Fraud is never presumed. Steinbach v. Bauclair, 38 N.D. 223, 164 N.W. 672. There is nothing in the evidence to warrant the imposition of a constructive trust upon the Hasby property or the holding of Lincoln L. Chapin as involuntary trustee thereof.

When Lincoln L. Chapin purchased the shares of the known heirs he became cotenant with the Fellmans. His claim against them is not by virtue of the heirship proceedings but by adverse possession. He shows that while those deeds he obtained from the heirs were denominated "quitclaim" deeds, they are still effective to give color of title. In Morrison v. Hawksett, N.D., 64 N.W.2d 786, 787, we held that:

"Whether the deed was a warranty deed or a quitclaim deed is unimportant as one is as effective as the other to confer color of title. 2 C.J.S. Adverse Possession § 72, p. 603. Stiles v. Granger, 17 N.D. 502, 117 N.W. 777. The important consideration is what the deed purports to convey. If a deed executed by a cotenant purports to convey full title to the land to a stranger and the grantee records his deed and enters into possession of all the land described in the deed, the possession of the grantee is adverse to the other cotenants and is under color of title. Thurmond v. Espalin, 50 N.M. 109, 171 P.2d 325; Ulrich v. Coleman, 218 Ark. 236, 235 S.W.2d 868; Farmers State Bank, Clay Center v. Lanning, 162 Kan. 95, 174 P.2d 69; Jones v. Siler, 129 Tex. 18, 100 S.W.2d 352."

In the four deeds which Lincoln L. Chapin obtained from Ole Hasby, Phillip Letcher, John Letcher, and Daniel Letcher, the grantor in each case, "does by these presents, *Grant, Bargain, Sell, Remise, Release and Quitclaim unto the said party of the second part and to his heirs and assigns, forever*, all the following described lot, piece, or parcel of land situated in the County of McKenzie and State of North Dakota, (describing the land in issue.)" These deeds are more than quitclaim deeds. They contain all the ingredients of a grant as provided by statute. Section 47–1013 NDRC 1943, provides: "A fee simple title is presumed to be intended to pass by a *grant* of real property unless it appears from the grant a lesser estate is intended." Sec. 47–1008 NDRC 1943, says that: "Every grant of an estate in real property is conclusive against the grantor and every one subsequently claiming under him. * * *"

The language of those deeds indicate that the grantor was granting the whole title to the land to Lincoln L. Chapin.

"It is familiar law, that where certain cotenants execute a deed to the entire property, this amounts to a repudiation of the tenancy, and the purchaser taking possession holds adversely to the others. The registration of such deed is notice." Naylor & Jones v. Foster, 44 Tex.Civ.App. 599, 99 S.W. 114, 115. See also 4 Thompson on Real Property, Perm.Ed., Sec. 1887, p. 434.

In Witherspoon v. Brummett, 50 N.M. 303, 176 P.2d 187, it was held:

"A deed purporting to convey entire tract to decedent and under which he took actual and exclusive possession operated as a disseizin of all others, and was sufficient notice to all claimants, including tenants in common, that property was claimed adversely to them."

Lincoln L. Chapin went into possession of these premises under the decree of heirship and the deeds he received from all who were named as heirs in that decree. That decree on the face of it is valid and even if found void it was color of title. Smith v. Nyreen, N.D., supra. The deeds from four of the heirs named in that decree by their language passed the entire title of the premises to Lincoln L. Chapin. Morrison v. Hawksett, supra. When this decree and these deeds had been placed on record and Lincoln L. Chapin took possession thereunder, that was constructive notice to the public, including the Fellman heirs, of their adverse possession.

The Fellmans argue very strenuously that the claim of the plaintiffs of adverse possession had to be "brought home" to the cotenants by actual notice and claim that was not done. They cite Ellison v. Strandback, N.D., 62 N.W.2d 95; Rovenko v. Bokovoy, 77 N.D. 740, 45 N.W.2d 492, and Stoll v. Gottbreht, 45 N.D. 158, 176 N.W. 932.

We have carefully studied those cases and come to the conclusion that the facts in each of them differ from the facts in the case at bar, so that they do not apply. We find the weight of authority to be as follows:

"Where a cotenant purports to convey the fee to the entire premises held by him jointly with others, and the grantee enters endeavoring to establish in himself title to the entire premises by adverse possession, it is essential that the cotenants of the grantor should have notice of the adverse claim of the grantee. *It is not essential, however, that the cotenants receive actual notice, if by reason of the facts and circumstances, they can be charged with notice that their interests are being jeopardized*, and conconstructive notice is equally effective even though the cotenants are nonresidents of the state wherein the property is located. 1 Am.Jur. Adverse Possession, Sec. 69, p. 834." (Emphasis supplied.)

Lincoln L. Chapin had secured his deeds and recorded them by August 15, 1944. For the 1945 season he leased these premises to a tenant, who cultivated 15 acres of it. Such possession is deemed to extend to the boundaries described in his deeds. Tarnovsky v. Security State Bank of Killdeer, N.D., 77 N.W.2d 828. Gale v. Shillock, 4 Dak. 182, 25 N.W. 661; 1 Am.Jur. Adverse Possession, Section 207, p. 909. In 1946, Lincoln L. Chapin had the cultivation continued and all the rest of the land enclosed by a fence, and paid the taxes. On March 17, 1947, he deeded the premises to his sons, Lincoln Chapin, Jr., and Donald E. Chapin, the plaintiffs in this action. They continued the possession, cultivation and use of the land until the bringing of this action on August 18, 1955. No evidence is offered to contradict adverse possession. The tacking of the possession and payment of the taxes is permitted by Chapter 275 S.L. 1953, which amended Section 47–0603 NDRC 1943, hereinafter quoted. There is no question but that the plaintiffs had ten years adverse possession.

The question of whether the plaintiffs have paid the ten years of taxes required under this statute is raised. Lincoln L. Chapin, the plaintiffs' predecessor in title, paid the 1945 and 1946 taxes before he deeded the property to the plaintiffs. There is no question but that the plaintiffs had a right to tack those two years payment of taxes to the number of years they have paid after they acquired title, since this action was begun after the amended Section 47–0603 NDRC 1943 became effective. The plaintiffs claim to have paid eight years taxes since that time. The eighth year, however, was paid after this action was commenced and the question is whether that payment can be counted. The record shows that adverse possession of these premises by plaintiffs or their father commenced at least in the early spring of 1945; that the first taxes paid by them were the 1945 taxes; that this action by them to quiet title was commenced on August 18, 1955; that service on the defendants was completed by Oct. 8, 1955; that the 1954 taxes were paid on Oct. 13, 1955.

Our statute establishing title by adverse possession is Section 47–0603 NDRC 1943, and reads as follows:

"A title to real property, vested in any person who has been or hereafter shall be, either alone or including those under whom he claims, in the actual open adverse and undisputed possession of the land under such title for a period of ten years and who, either alone or including those under whom he claims, shall have paid all taxes and assessments legally levied thereon, shall be valid in law. Possession by a county under tax deed shall not be deemed adverse. A contract for deed shall constitute color of title within the meaning of this section from and after the execution of such contract. This Act (section) shall take effect on January 1, 1954."

Defendants Fellman contend strenuously that the plaintiffs must have both the adverse possession and the payment of taxes for ten years before bringing an action; that otherwise the adverse character of his possession is suspended at the time he brings his action. That since the tenth year of payment of taxes was not paid until after this action was commenced the plaintiff did not have title under the statute when he commenced the action. Many cases are cited to that effect. It must, however, be noticed that each of those cases is based upon the statute of the state in which the action is tried. Those statutes differ in many cases and are decided according to the language used.

The plaintiffs base their adverse title against the Fellmans upon actual open adverse and undisputed possession and payment of taxes, for ten years. They allege in their complaint that they have an estate in fee simple in the property described and are entitled to the immediate possession thereof. Then they set forth that the de-

fendants claim certain estate or interests in or liens or encumbrances upon such property adverse to the plaintiffs but that each and all of such claims of said defendants are junior and inferior to the right, title and interest of the plaintiffs in and with respect to the said property, and plaintiffs ask that such claims be declared null and void and title quieted in them.

The defendants Fellman claim that because plaintiffs' complaint sets forth that somebody else claims title to the premises, the adverse and undisputed possession of plaintiff, provided in Sec. 47–0603, supra, is suspended thereby. The reason for that allegation in the complaint is that the complainant has to show some cause for bringing the action. At the same time the complaint alleges that such claims are untrue.

In Welner v. Stearns, 40 Utah 185, 120 P. 490, 491, it is held:

"One in adverse possession does not arrest the running in his favor of the statute by commencing an action under Comp. Laws of 1907, § 3511, * * * while, as is necessary, alleging that the defendant claims an estate or interest in the property adverse to him, not admitting his title, but alleging that his claim is baseless and without right; and she not appearing."

In 1 Am.Jur. Adverse Possession, Section 179, p. 891 it is said:

"An action to determine conflicting claims brought by an occupying claimant does not arrest the running of the statute as between the claimant and defendant in such action where no answer is filed and no right hostile to the claimant is asserted therein."

 It is clear that as long as the plaintiffs' possession of the land is open adverse and undisputed the ten year statute above cited applies. An action by the claimant of adverse possession does not dispute his own possession. It is only when his claim is disputed by someone else that the statute is suspended.

In Wallace v. Neumann, Tex.Civ.App., 74 S.W.2d 283, it is held that in action to try title to land claimed by adverse possession, serving of an answer claiming title in a defendant suspends running of adverse and open possession on the date of such service thereof.

Answers were filed within the statutory time on behalf of defendants Edwin Letcher, John Letcher, Phillip Letcher, Daniel Letcher, Margaret Peterson, William Stoughton, Myron Stoughton, Mildred Stafne, Winnifred Dewhirst, Myrtle Jore, Rosemary Fox, and Olaus Hasby. Those answers included a general denial of plaintiff's title and claimed an interest in said land for the defendants superior to the interests of plaintiffs. They ask that plaintiffs' complaint be dismissed and the defendants have such relief as the court may deem just and proper. By these answers, therefore, the defendants not only deny plaintiffs' title but also counterclaim for a determination of their interests in the land. The question arises whether by virtue of these answers disputing plaintiffs' claim of title the character of plaintiffs' possession under the statute was suspended.

The evidence shows that the defendants, Edwin Letcher, John Letcher, Olaus J. Hasby, Daniel Letcher, Margaret Peterson and Mary Stoughton had sold their interest in that land to Lincoln L. Chapin and executed deeds of their whole interest in the land to him before this action was begun. Such deeds had been recorded and were introduced in evidence by the defendants. Mary Stoughton had executed her deed to Lincoln L. Chapin on May 8, 1944. She died in 1953, at which time she had no interest in this land. The defendant, William Stoughton, her husband, and her children, Myron Stoughton, Mildred Stafne, Winnifred Dewhirst, Mrytle Jore, and Rosemary Fox, therefore, inherited no interest in this land.

On that state of the evidence the court correctly found and determined that the claims of those defendants and each of them were "invalid, inferior and junior to the right, title and interest of the plaintiffs in and with respect to said real property; that the title of the plaintiffs be and the hereby adjudged null and void * * * that the title of the plaintiffs he and the same is hereby quieted as to such claims."

While it is true that defendants by disputing plaintiffs' title in their answer would suspend the character of plaintiffs' possession under the statute from the date such answers were served, that applies only if the answers are successfully prosecuted in the action. An unsuccessful denial of title does not break the continuity of the open and adverse possession by the plaintiffs. The courts are practically in harmony in holding that a claim as to title to real estate which fails and does not result in a judgment in favor of the one prosecuting such claim, does not have the effect of suspending or tolling of the statute of adverse possession in favor of the person against whom such claim is prosecuted. 1 Am.Jur. Adverse Possession, Sec. 181, p. 892; L.R.A. 1918A, Annotation p. 1046; 4 Tiffany Real Property, 3rd Ed. Sec. 1161, p. 478; 5 Thompson on Real Property, 1957 Replacement, Adverse Possession, Sec. 2552, p. 579.

In De Ridder's Unknown Heirs, etc. v. Belknap, 312 Ky. 185, 226 S.W.2d 948, it is said:

"Where petitioner had been in continuous, open, notorious, hostile and adverse possession of farm land under a void deed from the United States, unsuccessful actions concerning land by heirs of former owner, who had lost land to United States for taxes, which had not affected petitioner's possession, did not arrest running of statute of limitations and petitioner was entitled to have title quieted in him."

In Gibbs v. Lester, Tex.Com.App., 41 S.W.2d 28, it is held:

In order to stop the running of the statute of limitations, a suit must not only be to recover the estate, but must be adverse to the person claiming title under the statute, by someone claiming adversely, and must be prosecuted to final judgment. See also Yorbo v. Anaheim Union Motor Co., 41 Cal.2d 265, 259 P.2d 2.

It is clear, therefore, that in the case at bar the character of plaintiffs' adverse possession was not interrupted by the answers of the defendants claiming title in themselves which were prosecuted unsuccessfully.

On Oct. 6, 1955, the attorneys for the defendants Fellman, and attorneys for the plaintiffs entered into the following stipulation:

"It is hereby stipulated by and between the parties hereto, through their respective attorneys of counsel that Phillip Fellman, Marjorie Harbough and Edwin Fellman, et al., Defendants, shall have until November 9, 1955, to enter an answer to the Summons and Complaint in the above entitled action, and that no default shall be entered against said Defendants until after the 9th. day of November 1955."

The plaintiffs lived up to that stipulation and entered no default judgment against the said defendants. No answer, however, was made by the said defendants until Nov. 23, 1955. That answer denied the title of the plaintiffs and set up a claim of an interest in the property by the defendants. Plaintiffs' attorney admitted service thereof on Nov. 23, 1955.

It has, however, been claimed that under the stipulation that answer should be considered as of the date of the stipulation, October 6, so that the answer would suspend the statute of plaintiffs' adverse possession before the 1955 taxes were paid on Oct. 13, 1955. The question is whether the stipulation warrants any such conclusion.

"A stipulation is an agreement, admission or concession made in the judicial proceeding between the parties thereto or their attorneys in respect to some matters incident thereto." 50 Am.Jur. Stipulation, Section 2, p. 605.

In re Quantius' Will, 58 N.M. 807, 277 P.2d 306, the court held:

"Generally, stipulations should receive a fair and liberal construction but should not be so construed as to extend beyond that which a fair construction justifies, and must be construed in light of circumstances surrounding parties and in view of results which they are attempting to accomplish."

Considering the language of the above stipulation it is clear that the object of the defendants was to secure an extension of time within which to answer. That is the only purpose that can be inferred from the wording of the stipulation. The plaintiffs granted the extension of time to answer and agreed not to file a default judgment against the defendants within that extended time. That is all the stipulation covers. It does not challenge the title of the plaintiffs nor indicate the purpose to have the answer, when made, relate back to the time of the stipulation for that purpose. It does not suspend the statute governing the adverse possession in any way.

The answer of the defendants Fellman on Nov. 23, 1955, disputed the plaintiffs' title and sought to have plaintiffs' claims adjudged null and void and their own rights in the land in question determined. That was a sufficient answer to toll the statute concerning adverse possession at that time. In the meantime, however, on Oct. 13, 1955 the plaintiffs paid the 1954 taxes. That was the tenth year of the payment of taxes and completed the payment of taxes before plaintiffs' adverse possession was disputed. At that time plaintiff had completed the conditions necessary in accordance with Sec. 47-0603, supra, to make his title valid.

We conclude, therefore, that none of the defendants have any claim, right or interest in the property described and that the plaintiffs are entitled to judgment quieting title in them.

The judgment of the district court is affirmed.

MORRIS, SATHRE and BURKE, JJ., concur.

JOHNSON, J., did not participate.