# HOME OWNERS' LOAN CORPORATION v. STEVENS et al.

No. 6070. Decided January 12, 1940. (97 P. 2d 744.)

*William M. Shay,* of Cedar City, and *Samuel J. Carter* and *C. E. Henderson,* both of Salt Lake City, for appellant.

*N. J. Bates,* of Richfield, for respondents.

McDONOUGH, Justice.

Plaintiff, appellant here, instituted this action in the district court to foreclose a mortgage executed by defendants Wilford Stevens and Ruby Stevens, his wife, to secure a loan from the appellant. As to the defendants, other than the Stevenses, the complaint alleged that each of them "claims a lien against or interest as mortgagee, creditor, trustee, or otherwise in the property described in the said mortgage," and that such claim or interest is subsequent to and in all respects subject to the lien of plaintiff under its mortgage. It prayed a decree foreclosing such lien.

All defendants, except respondents Joseph F. Peterson and Josephine Peterson, defaulted or disclaimed. By their answer said respondents admitted that they claimed an interest in one parcel of the real estate described in plaintiff's complaint, denied that said claim was inferior or subject to the mortgage lien of plaintiff and alleged that they had purchased the described tract from Sevier County and had received a tax deed therefor; that they were the owners in fee of the described tract, free of any mortgage lien claimed by the plaintiff. They prayed a decree adjudging them to be such owners.

Plaintiff interposed to said answer a general demurrer which was overruled.

The trial court found for the answering defendants upon the issue raised by their answer, found that their tax title to the tract in question was valid and decreed them title thereto free of the lien of plaintiff's mortgage.

Plaintiff assigns two errors of the trial court, viz., that the court erred in overruling its demurrer to defendants' answer, and in making its conclusion of law and in entering judgment to the effect that the claim of defendants "is superior to the lien of plaintiff's mortgage." We shall first discuss the latter assignment.

Appellant's contention under this assignment is two-fold. First, it contends that under the findings of the trial court the respondents' tax deed is void because the notice given by the county of the May sale did not comply with the provisions of 80-10-68, R. S. U. 1933 (as amended by Chapter 62, Laws of Utah 1933). Secondly, it argues that conceding the validity of the "May sale" and of the subsequent purchase of the realty by respondent, the latter's tax title is nevertheless subject to the lien of plaintiff's mortgage because respondent had prior to the "May sale" received from the mortgagor a quit-claim deed to the property.

If appellant's position is correct as to the invalidity of the "May sale" and as to respondents' tax title being, because of the invalidity of such sale, subject to the mortgage

lien, it will not be necessary to examine the other basis of the second assignment, nor to inquire into the sufficiency of the answer of respondent raised by the first assignment. We shall therefore first discuss the contention that statutory notice of the May sale was not given and that the sale proceedings thereunder were invalid and the tax deed of respondents void.

Section 68 of Chapter 10, Title 80, construction of which is involved, reads (as amended) :

"Whenever a county has received a tax deed for any real estate sold for delinquent taxes, the board of county commissioners shall, during the month of May in each year, after publication, once a week for four consecutive weeks preceding the date of sale, in a newspaper having general circulation in the county or if no newspaper is published in the county, by posting in five public places in the county, offer for sale at the front door of the county court house, at the time specified in the notice, to the highest bidder, each parcel of real estate which has been conveyed to the county during the current year pursuant to the provisions of section 80-10-66 * * *."

Appellant argues that the foregoing requires not merely four publications before the date of sale, but that four weeks of publication must elapse prior thereto. In other words, it is argued that the statute prescribes not merely the number of publications but the duration of time of the notice. Appellant's assignment and brief presents to the court the problem of construing the statute, but cites no authorities in support of its contention. Respondents cite none to the contrary.

Numerous cases construe statutes or instruments which require publication once a week for a given number of weeks before sale of property at public sale. The various constructions thereof correspond, it appears, precisely with the possibilities. They may be divided into three groups: (1) those which hold that under such provision there must elapse between the date of first publication and the date of sale the number of days contained in the number of weeks specified in the statute or instrument. For instance, under such a rule

Section 80-10-68 above would require twenty-eight days to elapse between the date of first publication and the date of sale. The Supreme Court of Oklahoma has so construed a statute requiring publication once a week for three successive weeks. *Savery* v. *Board of County Com'rs of Beaver County,* 173 Okl. 284, 48 P. 2d 275; *Sarkeys* v. *Lee,* 149 Okl. 287, 300 P. 383; *Smith* v. *Bostaph,* 103 Okl. 258, 229 P. 1039; *Sitton* v. *Hernstadt,* 106 Okl. 140, 233 P. 676. A New York statute, Tax Law, § 151, requiring that notice of tax sale be published "at least once in each week for six weeks" together with notice that "on a day at the expiration of said six weeks specified in such notice" the real estate would be sold, was construed to require that forty-two days should intervene between the first publication and sale. *Bamonte* v. *Ocean Beach-Fire Island Co.,* 222 App. Div. 676, 225 N. Y. S. 19, affirmed in 248 N. Y. 642, 162 N. E. 558. See, also, *State ex rel. Compton* v. *Board of County Com'rs,* 18 Ohio App. 462; *Walker* v. *Stuart,* D. C., 261 F. 427.

(2) A second group construes such a statute or instrument as does the Supreme Court of Florida in *Watson* v. *Beacon Operating Co.,* 114 Fla. 773, 154 So. 866, which holds that such a statute has been complied with when notice has been published in four consecutive weekly issues of a newspaper which publications have appeared prior to sale date, although twenty-eight days did not elapse between the first publication and the date of sale. *In re Hegarty's Estate,* 45 Nev. 145, 199 P. 81; *State* v. *Yellow Jacket S. M. Co.,* 5 Nev. 415, *Dewitz* v. *Joyce-Pruitt Company,* 20 N. M. 572, 151 P. 237; *Hollister* v. *Vanderlin,* 165 Pa. 248, 30 A. 1002, 44 Am. St. Rep. 657.

The third view is that where a statute requires publication once a week for four consecutive weeks before date of sale it is necessary that publication be made in four successive calendar weeks preceding the calendar week in which the sale is held. *Bush* v. *Growers' Finance Corporation,* 176 Ga. 99, 167 S. E. 105; *Smith* v. *Associated Mortgage Com-*

*panies,* 186 Ga. 121, 197 S. E. 222; *Champion Box Co.* v. *Monatee Crate Co.,* 5 Cir., 75 F. 2d 340.

An examination of these cases reveals that in some jurisdictions the differing constructions turn upon the wording of the statute or of some other statutory provision which points to the construction given, while in others the several constructions are of statutes of the same wording. They differ, however, in important respects from the one here under consideration.

Under Section 80-10-68, R. S. U. 1933 (as amended), hereinabove set out, the sale is to be held in the month of May "after publication, once a week for four consecutive weeks preceding the date of sale." The thought that the four consecutive weekly publications are to be made before the date of sale is conveyed by the words "after publication." The words "for four consecutive weeks preceding the date of sale" convey the thought that four consecutive weeks are to precede the date of sale in each of which weeks a publication is to be made, rather than the thought that four publications only are necessary at any time after which the sale may be held.

Contained in the same sentence with the provision fixing the requisite publications in a newspaper is the prescription of posting of notice in lieu of publication where no newspaper is published in the county, viz., "or if no newspaper is published in the county, by posting in five public places in the county." Except by referring back to the preceding part of the sentence, we find no designation of the length of time during which such notices shall remain posted. By referring to the phrase hereinabove adverted to, we find that the notice shall remain posted "for four consecutive weeks preceding the date of sale." Thus read as to the posting provision the statute would require that the notice remain posted for four weeks, that is, twenty-eight days, before the sale date.

Hence, unless we can construe the words "for four consecutive weeks preceding the date of sale" as designating

merely the number of publications when construed in connection with the words "after publication, once a week," and when construed with reference to the words "by posting in five public places in the county" as prescribing duration of notice, we must conclude that the phrase under discussion has reference to duration of notice both in case of publication and of posting, since the statute clearly does not contemplate that a notice be posted four times during the period. Doubtless the legislature might prescribe the number of newspaper publications which would suffice as a prerequisite to holding a sale and duration of time of notice if made by posting, but as used in the section under examination it indicated no such distinction.

Were it not for the provision relative to posting, the correct construction to be given the newspaper publication provision might well be that given in the cases cited in group three above, i. e., publication in each of four consecutive calendar weeks, which calendar weeks precede the week in which the day of sale falls. The difficulty with this construction, as well as with that which would require only four publications on successive weeks and authorizing sale on any designated day after the last publication, is that it would necessitate construing the posting provision to mean that the posted notices should remain posted for such a length of time as would expire between the first publication of a hypothetical newspaper published on a suppositious date and the date of sale. The duration of time under such construction could be made definite either by holding that if the notices be posted for the least period of time which could transpire between the first of such hypothetical publications and the date of sale the statute would be complied with, or that only the longest period of time that could thus intervene would suffice. The former holding would require twenty-two days, the latter twenty-eight.

We construe Section 80-10-68, supra, in view of the context, to prescribe that notice of the May sale shall be given by publication of such notice once a week for four consecu-

tive weeks and that the four weeks' notice—that is twenty-eight days—should be given, measured from the date of first publication. The findings in this case that the first publication of notice of the May sale was made on April 30th and that the sale was held on May 22nd, after four weekly publications, reveals that only twenty-two days elapsed between the date of first publication and the date of sale. Under the construction of the statute indicated this was insufficient notice.

The failure of the county to publish the notice of said sale prescribed by law rendered such sale void. 26 R. C. L. 410; *Bamonte* v. *Ocean Beach-Fire Island Co.,* supra; *Savery* v. *Board of County Com'rs of Beaver County,* supra; *Sarkeys* v. *Lee,* supra. It being void, the subsequent acts of the county officials with respect to the realty stand on the same footing as though no May sale were had or attempted. The holding of such sale is a prerequisite to a private sale by the county, and absent a prior May sale the attempted private sale is unauthorized and void. *Utah Lead Co.* v. *Piute County,* 92 Utah 1, 65 P. 2d 1190. The sale, therefore, to the respondents in this case was ineffective to convey the title of the county. The title to the property, subsequent to the date of the purported May sale, and prior to a private sale to respondents, was the same as it was subsequent to the execution of the auditor's deed to the county and prior to the date of the purported May sale. The title, by virtue of the sale for taxes and the auditor's deed executed subsequent thereto, was in the county. However, until a valid May sale, respondent Joseph F. Peterson, by virtue of the deed from the Stevenses to him, had a right to redeem. Section 80-10-68, R. S. U. 1933 (as amended); *Utah Lead Co.* v. *Piute County,* supra.

It is provided by Section 80-10-68, R. S. U. 1933, that

"the board of county commissioners shall, at any time after the period of redemption has expired and before the sale as herein provided, permit a redemption from any sale where the property has been sold to the county."

Does such provision attenuate the four-year period of redemption provided by Section 80-10-59 in case the auditor's deed runs to the county, thus placing the owner or anyone else interested in the property—in case the latter may assert the right—in the strict status of a redemptioner or does one asserting the right thereby conferred purchase a new title from the sovereign free and clear of all encumbrances? The determination of this question is decisive of this case, for Peterson's receipt of a deed from the county subsequent to the void May sale operated no more favorably to him than would the receipt of such deed before the May sale but subsequent to the issuance to the county of the auditor's deed. If payment of taxes by him as the holder of a deed from the Stevenses would give him the right to get back his title redeemed from the tax sale, then he has title subject to the mortgage lien of the plaintiff. On the other hand, if by the provision under discussion the legislature meant to confer upon him a preferential right to purchase a new title, then the deed from the county conveyed a title free of such lien.

Such provision has been discussed in several previous opinions of this court, but in none of them has it been necessary to determine its effect. Thus in the case of *Deseret Irrigation Co.* v. *Bishop,* 92 Utah 220, at page 226, 67 P. 2d 210, at page 214, the question is posed in the opinion of the court, but we found it not necessary to decide it. In a concurring opinion by Mr. Justice Wolfe, the writer thereof puts the matter thus:

"Whether the county's obtaining its taxes, etc., by the so-called 'redemption' of the owner or by a sale of part of the property, worked a defeasance of the county's title as in the cases of payment of a mortgage debt under the old English law, where the mortgagee took title, or whether it gave the former owner only a preference [preferential] right to buy up to the May sale, it is not necessary to determine. * * * It may be that after the amendment of 1933, while an auditor's deed gives the county a technical title, the owner's right to redeem until a valid May sale may mean that, in effect, until such May sale, the county merely has a lien just as a deed intended to be a mortgage gives the mortgagee only a lien." See, also, *Hanson* v.

*Burris*, 86 Utah 424, 439, 46 P. 2d 400; *Utah Lead Co.* v. *Piute County*, 92 Utah 1, at pages 15 and 17, 65 P. 2d 1190.

Upon further consideration of the provision in the light of the policy of the law generally in regard to redemption from tax sale and of such policy as manifest by the taxation statutes of this state and of the wording and history of the particular provision we are of the opinion that the word "redemption" as used therein is used in the same sense in which the word "redeemed" is used in Section 80-10-59, R. S. U. 1933, with reference to the four-year period subsequent to the issuance of the tax sale certificate to the county.

The policy of the law regarding redemption from tax sale is thus stated in Cooley on Taxation, 3d Ed., vol. 2, p. 1023:

"It is not the policy of the law that any man should forfeit his estate because from inability, or even from negligence, he has failed to meet his engagements or to perform his duties by some exact day which has been prescribed by statute. On the contrary, it is for the welfare of every community that the law should favor the citizen in all reasonable measures for the preservation of his estate against losses which might result from his misfortunes or his faults, extending to him all the liberality that is consistent with justice to others and to a proper regard for the interest of the public. The principle is recognized in the liberality shown to those desirous to redeem from the technical forfeiture of mortgage estates, as well as in the provisions made for redemption from judicial sales. It is also very properly recognized in the laws providing for redemption from tax sales. * * *"

"The statutes which give the right are to be regarded favorably and construed with liberality. Abundant reason for this is assigned in the cases which recognize the rule. It has been justly remarked that the right of the government to sell lands for taxes, as it is accustomed to do, can only be maintained on 'the absolute sovereignty of the state in the exercise of its taxing power. To divest ownership, without personal notice and without direct compensation, is the instance in which a constitutional government approaches most nearly to an unrestrained tyranny. Whatever tends to modify this right is favorable to the citizen, and ought to be liberally construed, on the principle that remedial statutes are to be beneficially expounded.'"

Title 80 of R. S. U. 1933, and those statutes on taxation which preceded it we think manifests this policy, and it is particularly evidenced by Sec. 68 of Chapter 10 in its wording and history, presently to be adverted to. In the consideration thereof, with the policy as enunciated above in mind, we are aware of no considerations relative to according to the holder of the legal title every opportunity consistent with the interests of the public to retain or regain his title that are not equally applicable to the holder of a lien or to the owner of any other interest therein.

In determining the import of the word "redemption" as used in the provision under discussion, the history of the provision is interesting. In Revised Statutes of Utah 1898, Section 2655, the provision reads:

"The board of county commissioners may, at any time after the period of redemption has expired and before the property has been disposed of, permit the original owner or any person interested to redeem from any sale where the property has been sold to the county * * *."

In 1905 the provision was amended (Laws of Utah 1905, c. 76, p. 86) so as to limit the period of time after the "period of redemption," during which the county commissioners might permit a "redemption," as follows: "* * * after the period of redemption has expired and before the property has been deeded to the county or sold as herein provided." Under the statutes then in force it was provided that the auditor's deed should be made to the county "as soon as may be" after the filing in the auditor's office of the tax record following the expiration of the period of redemption. Revised Statutes of Utah 1898, Sec. 2629. Thus under the amendment of 1905 the county commissioners might permit a redemption after the four-year period and before deed issued to the county. By thus authorizing a redemption before the issuance of auditor's deed there was evidenced a legislative intent to merely extend the period of redemption. In 1911 the section was amended so that the provision read

that the board of commissioners might permit a redemption "after the period of redemption has expired and before the sale as herein provided." Laws of Utah 1911, c. 114, p. 189. The word "redemption," it seems clear, was used in the same sense as it was in the amendment of 1905. The only subsequent change was that of substituting "shall" for "may" causing the provision to read as it does now.

There is no incongruity existing between the provision fixing a four-year period of redemption and that extending such period until the date of public sale where title passes to the county. The four-year period of redemption still applies strictly in cases where the tax sale certificate is assigned to one entitled to purchase such certificate. Upon the expiration of such period the assignee of the certificate is entitled to his deed, and there is outstanding no interest in the property. But where the tax sale certificate is not assigned and title continues in the county, an extension of the period of redemption accords with the interest of anyone having an interest therein during the four-year period and is in no way inimical to the interests of the taxing units. The latter are interested in enforcing the payment of taxes, penalties and costs. This result will be reached as effectually by considering the period during which the county commissioners "shall permit a redemption" as an extension of the four-year period of redemption as by viewing the right thus conferred as a right to purchase a title free and clear of encumbrances. On the other hand, as to one interested in the realty, a construction of the provision under discussion which views it as conferring a preferential right of purchase will not preserve his interest should the right of purchase be exercised by another interested therein. Under such construction should the owner—at least one who owed no duty to a lienholder to pay the taxes for which the land was sold—purchase, the lien is gone. No advantage to the taxing unit ensues. True, at some point in the procedure the county must be in a position to sell the land free and clear of encumbrances as pointed out in previous decisions of this

court. Upon expiration of this extended period of redemption, that point is reached—the date of a valid May sale. After that date there is no right outstanding in either the former holder of the legal title or in a lienholder. The taxing units are thus protected in their right quite as effectually in holding, as we do, that the period under discussion is an extension of the four-year period of redemption, as they would be in holding such period to be one in which a new title might be acquired by one theretofore having an interest therein.

Peterson's receipt of a deed from the county subsequent to the void May sale operated no more favorably to him than would the receipt of such a deed before the May sale but subsequent to the issuance to the county of an auditor's deed. He received no more than he would have received had he paid the amount due the county for taxes after the four-year period of redemption had expired and before the May sale. No new title was acquired. Hence, his title redeemed from the sale to the county is a title which is subject to appellant's mortgage.

Respondent Peterson argues in his brief that the finding of the trial court that the defendants Wilford Stevens and Ruby Stevens, his wife, on the third day of March 1936 "made, executed and delivered to said defendant Joseph F. Peterson their deed of conveyance" covering the tract in question "which deed was recorded December 28, 1936," is not a finding that there was an actual manual delivery of the deed and an acceptance thereof by the grantee and that it cannot be inferred therefrom that Peterson ever had possession thereof or indeed that he had ever seen it. The argument proceeds thus: The fact of delivery of a conveyance is determined largely by the intention of a grantor which may be ascertained by his acts and declarations and by the circumstances surrounding the manual delivery to a third person. Hence, the finding hereinabove quoted does not necessarily comprehend more than a

mere parting with possession of the deed by the grantors with the requisite intent to convey and that it does not import an acceptance. The position is not tenable. The finding of the trial court was in response to an issue raised by the reply of plaintiff reciting the conveyance and alleging that by such conveyance defendant Peterson "acquired title to said real property subject to plaintiff's mortgage." We must read the finding in the light of that issue. Clearly the finding here of a delivery of the deed to defendant Peterson includes an acceptance by the latter—a conveyance to him of the interest of the grantors. A contrary construction would necessitate our concluding that the trial court had failed to find on one of the principal issues before it. The construction of such finding is of importance—in view of our conclusion that the May sale was invalid—because a finding that the defendant acquired by conveyance the interest of the defendants, Wilford Stevens and wife, places him in the position of a redemptioner, a contrary finding would reveal him as a purchaser at a void sale. The latter status would require that he be reimbursed for the money paid for his void title as a condition precedent to granting relief to appellant. As a redemptioner he would not be entitled to reimbursement. For while his payment of the taxes may have inured to the benefit of the appellant mortgagee, it was likewise of a benefit to him, since it gave him a legal title free of the effects of the auditor's deed to the county; and even after appellant's foreclosure of its mortgage such payment would reduce the cost of redemption from the foreclosure sale by the amount thereof.

It is our conclusion that the judgment of the trial court should be reversed and the record remanded to the lower court to make findings, conclusions and decree in accordance with this opinion. Such is the order. Costs to appellant.

PRATT, J., concurs.

WOLFE, Justice (concurring).

I concur. I agree that there was no valid May sale. Hence, if Peterson had obtained no quitclaim deed from the owner mortgagor, he could not be, in any event, an interested party who could "redeem" before a May sale. Peterson can stand in no better position than could his quitclaimor. Let us assume that he stands in the place of the owner—possessing by virtue of the quitclaim deed the valuable right to "redeem" up to the time of a valid May sale. In exercising his right he could not defend against the mortgagee any more than could his quitclaimor. We have said that the tax debtor who buys his formerly owned property from the county after valid May sale does so in recognition of the right of the mortgagee whose lien it was his duty to protect. *Hadlock* v. *Benjamin Drainage District,* 89 Utah 94, 53 P. 2d 1156, 106 A. L. R. 876. The legal conceptions which should be invoked in recognition and support of this more ultimate principle that one cannot profit by his own failure of duty are not so important. But the ultimate principle is important. The writer has thought estoppel would produce the just result. See dissenting opinion in *Hadlock* v. *Benjamin Drainage District,* supra. Certainly a mortgagee, whom I shall assume can make a "redemption" between auditor's deed and a valid May sale, would have the right to "redeem" under Section 80-10-68, R. S. U. 1933. A fortiori, an owner could not put himself in a better position as to such mortgagee by "redeeming" before a valid May sale than he could by buying from the county after a May sale. It would seem also that a grantee of the owner—Peterson— taking only the right of the owner, which has attached to it recognition of the lien of the mortgagee, could not be in a better position than the mortgagor-owner.

It would be unique, to put it mildly, after holding as did all the opinions in *Hadlock* v. *Benjamin Drainage District,* supra, that an owner by purchasing after a valid May sale could not purchase title from the county and set up that it

was free from his mortgagee's lien, to permit him in this case to do it before valid May sale, when by statute the mortgagee also is given a right to repurchase. And it would be just as incongruous to hold that a purchaser from the owner before valid May sale, charged with notice of the mortgagee's right, gains any greater advantage than his grantor—the taxpayer—as against such mortgagee. If such could be done, owners, the day after the four-year period of redemption, could convey to some other person and the mortgagee would be out, thus defeating the law.

In consequence, I cannot see how Peterson under any conception can escape the consequence that any interest—whatever it may be—he takes from the county, will be subject to the mortgagee's claim for resort. If it is the owner's title which is redeemed, then it is redeemed in the state in which it was lost, to wit: with the lien attaching. If it is a new title from the sovereign, the principle of estoppel operates to prevent him from asserting that the mortgagee has no lien. If it is a title in the county by auditor's deed subject to an extended period of redemption or to defeasance by the fulfillment of a statutory condition subsequent, the defeasance, as the redemption, brings back title to the owner subject to the mortgage. In the last analysis we must use the functional approach where conceptions would work a monstrous result. In the case where a mortgagee (if an interested party) tenders the taxes, penalties, interest and costs after the four-year redemption period and before valid May sale it may be necessary to determine whether he "buys" or "redeems" or defeats the county's title by a condition subsequent. If he is a preferential buyer he takes free of any equity of the owner or prior lienholder. If he is a "redemptioner," title goes back to the owner with the liens attaching. In such case I see no great hardship in adopting the conception that Sec. 80-10-68, R. S. U. 1933, gives a right to "rebuy" because the mortgagee buyer would be in exactly the same position as if he had purchased the certificate of title before the four-year period of redemption and taken an aud-

itor's deed. On the other hand we might conclude, as suggested by Mr. Justice McDonough, that the policy of the tax statutes was to permit to the utmost point possible a restoration of the status quo ante, when the county received the taxes. In such case we would conclude that the statute did extend the redemption period. But at this time we need not fasten on one conclusion or another. We may allow ourselves time for further guidance and thought by thus postponing that issue.

Be that as it may, where the owner "rebuys" or "redeems" or transfers to another such right, the equities are all against permitting such owner or his transferee to obtain title by a process involving a dereliction of duty. No man, who, by his failure to perform his duty to another, has set in motion legal processes which would otherwise not have ensued, should be permitted to use those processes in such a way as to turn his dereliction into a triumph over the one to whom he owed the duty. Such is the ultimate principle for which we contend. Such is the principle set out in the prevailing and dissenting opinions in *Hadlock* v. *Benjamin Drainage District,* supra. And if invocation of the principle of estoppel is necessary to prevent such result, the court will invoke it. And if the owner or his transferee has this valuable right to "rebuy" or "redeem," or to defeat the county's title by condition subsequent, whichever we may call it, such right may be foreclosed by the mortgagee before valid May sale. The fact that a right to "rebuy" or "redeem" between the end of the four-year period and a valid May sale may also lie in the mortgagee, which he may separably exercise, should not prevent him from foreclosing whatever interest still remains in his debtor or which may have been transferred to his debtor's grantee who, as above stated, must be assumed in law to have taken with notice of the mortgagee's prior right to reduce the right to "rebuy" or "redeem" to possession by foreclosure. Therefore, I concur in the results reached in the prevailing opinion and in the reasoning thereof, except as to commitment on the question as to

whether Sec. 80-10-68, R. S. U. 1933, as amended, extends the four-year period of redemption provided for by Sec. 80-10-59. As to that question I think the same results may be reached in this case by either process of reasoning and do not commit myself.

LARSON, Justice (dissenting).

I dissent. I cannot agree with the interpretation of the statute made in the prevailing opinion relative to notice of May sale, or to that relating to redemptions. To my mind the interpretations made depart from and disturb what has been the rule in this jurisdiction since statehood, again cast tax titles into obscurity and uncertainty, and inject an element of doubt into any tax title heretofore taken.

But inasmuch as the Legislature has repealed the statutes construed in the opinion, and the interpretations made thereof cannot affect any new titles or new sales, no purpose would be subserved in setting forth what I consider the very apparent errors in the reasoning and the interpretations laid down. By Chapter 101, Laws of Utah 1939, the Legislature has disposed, as to future sales, of all questions here involved and provided a new and simplified procedure for tax sales.

Since the statutes construed are no longer in effect, I need say nothing about them except an emphatic dissent.

MOFFAT, Chief Justice (dissenting).
I concur with what is said by Mr. Justice LARSON.