## PETERSON v. WEBER COUNTY, et al.

No. 6109.   Decided June 22, 1940.   (103 P. 2d 652.)

*John A. Hendricks,* of Ogden, for appellant.

*H. H. Henderson,* of Ogden, for respondent.

BRONSON, District Judge.

On December 8, 1936, plaintiff, respondent here, brought suit against Weber County, the Board of Commissioners thereof, and the Globe Oil Company, to restrain the county from executing a quit claim deed to certain property to the Globe Oil Company as grantee, and to compel the commissioners to accept from plaintiff an amount of money theretofore tendered, sufficient to pay the taxes, interest, penalties, and costs, that had accrued following the sale of the property by the county for the taxes for the year 1927. The plaintiff's claim is based upon a quit claim deed to the

property in question which he secured June 24, 1936, from prior owners with undisputed title.

The claim of the defendant Globe Oil Company is based upon a quit claim deed executed on behalf of Weber County, December 24, 1936. The Board of County Commissioners had, on the 9th day of September, 1935, passed a resolution and entered the same in the minutes of their proceedings, undertaking to sell the property to the defendant company upon terms which were met by the company by payment to the county of $1,035.90. The defendant company made a partial payment and took possession of the property shortly after September 9, 1935, and proceeded to erect certain improvements thereon, consisting of a gasoline and oil filling station, living quarters for an attendant, grease pits, etc. The property was a corner lot in the City of Ogden, vacant at the time the Globe Oil Company took possession.

The rights of Weber County to the property are predicated upon the following: The property was sold January 20, 1928, for the general taxes levied thereon for the year 1927, and the County Treasurer issued tax sale certificate to Weber County. The taxes thereafter not being paid and the property not being redeemed, the County Auditor of Weber County issued an auditor's deed thereto to Weber County on January 28, 1932. The property was noticed for sale and sold to Weber County May 24, 1932. It is undisputed that the County Treasurer never certified the tax sale record of said property to the County Recorder as required by law. It is also undisputed that the publication of the notice of the May sale was made for four consecutive weeks and as follows: May 2nd, May 9th, May 16th, May 23rd, 1932, and the property was sold May 24th, 1933, a lapse of only 22 days after the first publication.

The plaintiff asserted, among other things, that the May sale was void for the reason that the same was not properly noticed, the statute requiring the lapse of four full weeks, or 28 days, between the first publication and the sale, and

that the failure of the County Treasurer to certify the tax sale record to the County Recorder rendered the auditor's deed void. The trial court so found, adjudged the quit claim deed of December 24, 1936, from the County to the defendant Globe Oil Company to be null and void, quieted title in the plaintiff and directed the payment over to the Globe Oil Company the sum of $1,146.50, which had been paid into the court by plaintiff, and which was the amount, with interest, paid by the Globe Oil Company to the County for the property.

There being no objection, the trial court allowed the defendant company to supplement its answer by adding thereto, pursuant to the occupying claimants statute a claim for the appraised value of the permanent improvements placed upon the property by the defendant company while in possession. It was uncontroverted, upon a further hearing on this phase of the case, that all of the improvements were made after the defendant company went into possession of the property, pursuant to the agreement to purchase and after part payment of the purchase price, but long prior to the time the company received its quit claim deed from Weber County. The trial court found that the improvements were placed upon the property while it was occupied by the company without any color of title, and included in the decree an order restraining the defendant company from removing any of the permanent improvements and requiring them to vacate and deliver possession of the premises to plaintiff within 15 days.

The various assignments of error assail, first, the court's finding, that the deed to the defendant company from Weber County was null and void. Section 6056, Compiled Laws of Utah 1917, as amended by Chapter 140 Laws of Utah 1921, here involved, provided:

"Whenever a county has received a tax deed for any real estate sold for delinquent taxes, the board of county commissioners shall, during the month of May in each year, after publication once a week for four consecutive weeks preceding the date of sale, in a newspaper

having general circulation in the county, or if no paper is published in the county, by posting in five public places in the county, offer for sale at the front door of the county court house, at the time specified in the notice, all such real property not heretofore sold or redeemed * * *."

This statute appears as Section 68 of Chapter 10, Title 80, Revised Laws of Utah 1933, as amended by Chapter 62, Laws of Utah 1933— but the provisions here pertinent have not been altered by the subsequent amendments.

Does this statute require the publication of the notice for four full weeks, or 28 days, preceding the May sale, and if so, does a failure to so publish the notice invalidate the May sale? The same question was recently before this Court in the case of *Home Owners' Loan Corporation* v. *Stevens*, Utah, 97 P. 2d 744, 747. There, as here, 22 days only elapsed between the date of sale and the date of first publication. Mr. Justice McDonough in the prevailing opinion said:

"We construe Section 80-10-68, * * * to prescribe that notice of the May sale shall be given by publication of such notice once a week for four consecutive weeks and that the four weeks' notice— that is twenty-eight days—should be given, measured from the date of first publication. The findings in this case that the first publication of notice of the May sale was made on April 30th and that the sale was held on May 22nd, after four weekly publications, reveals that only twenty-two days elapsed between the date of first publication and the date of sale. Under the construction of the statute indicated this was insufficient notice.

"The failure of the county to publish the notice of said sale prescribed by law rendered such sale void. 26 R. C. L. 410; *Bamonte* v. *Ocean Beach-fire Island Co.*, supra [222 App. Div. 676, 225 N. Y. S. 19]; *Savery* v. *Board of County Com'rs of Beaver County*, supra [173 Okl. 284, 48 P. 2d 275]; *Sarkeys* v. *Lee*, supra [149 Okl. 287, 300 P. 383]. It being void, the subsequent acts of the county officials with respect to the realty stand on the same footing as though no May sale were had or attempted. The holding of such sale is a prerequisite to a private sale by the county, and absent (sic) a prior May sale the attempted private sale is unauthorized and void. *Utah Lead Co.* v. *Piute County*, 92 Utah 1, 65 P. 2d 1190. The sale, therefore, to the respondents in this case was ineffective to convey the title of the

county. The title to the property, subsequent to the date of the purported May sale, and prior to a private sale to respondents, was the same as it was subsequent to the execution of the auditor's deed to the county and prior to the date of the purported May sale. The title, by virtue of the sale for taxes and the auditor's deed executed subsequent thereto, was in the county. However, until a valid May sale, respondent Joseph F. Peterson, by virtue of the deed from the Stevenses to him, had a right to redeem."

The holding is decisive upon the question involved in the instant case. Failure to publish the notice of the May sale as required by law rendered the sale void, and until a valid May sale the plaintiff herein had a right to redeem. The final disposition of this case renders it unnecessary to consider the other assignments on this phase of the controversy.

The right to recover for improvements placed upon real property where title to the land is subsequently established in another, is under our statutes predicated upon good faith, occupancy and color of title all existing at the time the improvements are made. Chap. 6, Title 78, R. S. U. 1933. The defendant company made improvements after they had taken possession and paid a part payment of the purchase price but prior to the time they received the quit claim deed from the county. Their good faith is conceded. Under these facts the only question is: Did the defendant company have color of title at the time the improvements were made? If so, they are entitled to recover their value, otherwise not. Sec. 1 of Chap. 6, Title 78, R. S. U. 1933, provides:

"Where an occupant of real estate has *color of title* thereto, and in good faith has made valuable improvements thereon, and is afterwards in a proper action found not to be the owner, no execution shall issue to put the plaintiff in possession of the same after the filing of a complaint as hereinafter provided, until the provisions of this chapter have been complied with." (Italics added.)

Sec. 4 of Chap. 6, Title 78, R. S. U. 1933, provides:

"A purchaser in good faith at any judicial or *tax sale* made by the proper person or officer has color of title within the meaning of this chapter, whether such person or officer has sufficient authority to sell or not, unless such want of authority was known to such purchaser at the time of the sale   *   *   *." (Italics added.)

The accepted weight of authority in the absence of statute is to the effect that color of title can be founded only upon an instrument in writing. "Color of title" is a writing upon its face purporting to pass title, but in fact does not. In *Oliver* v. *Pullman*, C. C., 24 F. 127, 130, it is said,

"The phrase 'color of title' signifies some written document which appears to be a title to land, but is not a good title."

In *Baber* v. *Baber*, 121 Va. 740, 94 S. E. 209, 213, the court said:

"*   *   *   color of title must be by deed or will, or other writing, which purports or contracts to pass title."

In *Beverly* v. *Burke*, 9 Ga. 440, 54 Am. Dec. 351, the court said:

"Color of title   *   *   *   may be defined to be a writing, upon its face professing to pass title, but which does not do it."

In *Packard* v. *Moss*, 68 Cal. 123, 8 P. 818, 820, it was said:

" 'Color of title' is defined to be an apparent title, founded upon a written instrument, such as a deed, levy of execution, decree of court, or the like." See also *Lindt* v. *Uihlein*, 116 Iowa 48, 89 N. W. 214; *Acme Brewing Company* v. *Central R. & Bkg. Co.*, 115 Ga. 494, 42 S. E. 8; *United States* v. *Casterlin*, C. C., 164 F. 437; *Slatton* v. *Tennessee Coal, Iron & R. Co.*, 109 Tenn. 415, 75 S. W. 926; *Deffeback* v. *Hawke*, 115 U. S. 392, 6 S. Ct. 95, 29 L. Ed. 423; *Armijo* v. *Armijo*, 4 N. M. 133, 13 P. 92; 1 Am. Jur. 901, 14 R. C. L. 21.

The reader is referred to an annotation in 2 A. L. R. at page 1457 where a large number of cases supporting the rule are collected.

The above statutes countenance such a conception of color of title and Sec. 4 provides inter alia that one who is a purchaser at a "tax sale" has color of title without any requirement that he hold any written instrument purporting to convey title. If a purchaser at a "tax sale" or judicial sale under the conditions prescribed in Sec. 4 received an instrument in writing of any kind purporting to convey the property he would under the above authorities have color of title by virtue of the instrument. Those who thus held land would have no need for such a statute as Sec. 4. And to say that some document purporting to convey title is necessary to establish color of title by one purchasing at a "tax sale" under the conditions set out in Sec. 4 would deprive that statute of any significance.

The defendant company pursuant to an oral agreement having entered into possession and paid a part of the purchase price held as against the county an equitable title, and must be considered a "purchaser" in the transaction had with the county. And we think the term "tax sale" as used in the occupying claimant's statute ▆ refers to a transaction whereby the purchaser becomes the holder of a title, legal or equitable, the validity of which is dependent upon the regularity of prior tax proceedings. Color of title under some circumstances without paper indicia is created by statutes in nearly all the states but wide dissimilarity in their application renders their consideration here of little value. The purposes sought to be accomplished, however, are uniform. 16 Am. Eng. Ency. of Law, 62. A recognition of the instability of tax titles, a consideration for the public interest as well as equity and justice to the individual is here involved. One who purchases in good faith from a county, property that it has acquired through the operation of the tax laws, should become vested with some fixed property right that will permit him to proceed to develop the land without doing so in peril of losing the value of all the improvements, if title is subsequently established in another. The statute

is an assurance that such purchasers may, so long as they have acted in good faith, immediately commence the improvement and development of the property without the risk of loss as regards such improvements. The public interest is thus served by encouraging the development of real property and its return to the tax rolls. The instant case well illustrates the injustice that would result from any other interpretation of the statute as well as some of the reasons for its enactment. Had the defendant company purchased at the May sale in 1932 and for some reason not received a deed, it would have just as surely and for the same reasons as here, lost the property. No one could reasonably question the application of the expression "tax sale" as used in the statute to the May sale, nor doubt that the company would have color of title under such circumstances, and we see no reason why a strict and technical meaning should be given to the words "tax sale" in view of the purposes sought to be accomplished by this law. By what is here said it is not intended to define or give any meaning to the words "tax sale" outside their use in the statute under consideration.

Respondent has moved to dismiss the appeal upon the ground that Weber County and the Commissioners thereof are adversely affected and were not made parties to the appeal. We have considered the motion and find it without merit.

The trial court was correct in holding title to the property to be in Weber County with the right of redemption in Peterson, but in view of our interpretation of the statute, erred in holding that the defendant did not have color of title at the time the improvements were made. The Globe Oil Company is entitled to the appraised value of the improvements and Peterson is entitled to have title quieted in him to the property upon paying to the company the appraised value of the improvements and the amount paid by the company to the County for the property,

with interest on the latter to July 9, 1938, the date of judgment.

The judgment is thus affirmed in part and reversed in part and the cause is remanded to the District Court of Weber County with directions to proceed in accordance with Chap. 6 of Title 78, Revised Laws of Utah 1933, to determine the value of the land and improvements separately and to enter its decree that title to the property be quieted in Peterson upon his payment to the Globe Oil Company, within such reasonable time as the court may designate, the appraised value of the improvements and the amount paid by the company to the County for the property, with interest to July 9, 1938, less any lawful offsets Peterson may have. In case Peterson fails to make such payment within such reasonable time as the court may fix the Globe Oil Company shall be given a reasonable time to pay the appraised value of the land without the improvements and shall upon so exercising such option have title to the property quieted in it. If neither party exercises their option, then they shall be decreed to be tenants in common of all the real estate, including improvements, each holding an interest proportionate to the values ascertained on the trial. Each party to pay its own costs.

MOFFAT, C. J., and LARSON and McDONOUGH, JJ., concur.

PRATT, J., being disqualified, did not participate herein.

WOLFE, Justice (concurring).

I concur but I think it should be noted that the occupying claimant's statute contemplates a separate action for recoupment for improvements, Sec. 78-6-2, R. S. U. 1933. The pleadings in this case took the following course: Plaintiff appealed to equity not for a mere pronouncement that title was in him instead of in the defendant but for (1) a quit claim deed from the County to be issued upon his payment of taxes due, and for (2) an injunction to prevent

the County from executing a conveyance to the Globe Oil Company. Thus the complaint had the aspects of a bill quia timet which requires affirmative action by equitable interposition and permits such action to be granted on conditions—one of which might be the payment to defendant of such sums as should be paid to do equity in both directions. Implied in the plaintiff's action was a prayer for the quieting of title because his prayer for remedy was founded on the proposition that he had title and that the court would so pronounce as a preliminary to the remedies which it was asked to decree. The Oil Company in its answer set up facts to show that plaintiff had not title but that title was in it, and prayed merely to have title quieted in it. Later it filed a supplementary answer asking that the court find the value of the improvements and require plaintiff to pay for the same, thus apparently abandoning its other position that title was in it. Thus the suit was seemingly converted into one wherein the defendant, instead of asking that title be declared to be in him, asked the court to find the value of the improvements and require their money equivalent to be included in plaintiff's tender. Technically, perhaps, the suit between plaintiff and defendant on the matter of title should have been concluded first and then, if judgment was for plaintiff the defendant should have brought his complaint for recoupment for value of improvements asking that execution be stayed on the other suit until such was determined. Certainly such should have been the procedure unless Chap. 6 of Title 78 gives an independent remedy which does not exclude equity, in proper cases, from requiring a tender of value of improvements as a condition of its granting a remedy prayed for. But in view of the continual tendency toward simplified procedure and prevention of multiplicity of actions, and in view of the fact that the parties adopted this procedure, I see no real objection to the result reached in this decision. A pure action to quiet title, as said before, may involve nothing more than a declaration by the court as to where as

between A and B title resides, or as to which has the better title. See *Fisher* v. *Davis,* 77 Utah 81, 291 P. 493. But also, as stated before, most actions to quiet title have imposed upon them prayer for affirmative relief. It is in the exercise of its discretion in granting this relief which is in addition to the mere pronouncement' of where title resides, that the court may, as a condition in order to do complete justice, require the tender of taxes paid by the purchaser. *Bolognese* v. *Anderson* et al., on petition for rehearing, 87 Utah 455, 49 P. 2d 1034; *Burton* v. *Hoover,* 93 Utah 498 at page 500, 74 P. 2d 652. And perhaps it may as in this case, impose as a condition to the granting of affirmative relief that the value of the improvements made in good faith be paid. If so, this is a power inherent in equity and independent of the occupying claimant's statute. But whether this action is to be treated as coming under Chap. 6 of Title 78, R. S. U. 1933, or as a condition which the court of equity may impose upon the granting of relief asked, in order to do full equity, I concur in its result and supporting reasoning.