## BOZIEVICH v. SLECHTA et al.

No. 6865. Decided February 16, 1946. (166 P. 2d 239.)

*Moyle & Moyle,* of Salt Lake City, for appellant.

*William G. Shelton* and *Ralph A. Sheffield,* both of Salt Lake City, for respondent.

WADE, Justice.

Marie Bozievich, the appellant herein, commenced an action to quiet title to certain real property situated in Salt Lake City, Utah, against Wesley Slechta et al., the respondents herein. The complaint alleged that she was the owner and entitled to the possession of the land and that the defendants were claiming some interest therein. The defendants Aimee Walker and Ralph Bell Thomas failed to make appearances and their defaults were duly entered. Slechta appeared and answered, pleading that plaintiff was barred from bringing this action under the provisions of what is now Sec. 104-2-5, U. C. A. 1943, because she had not been in possession of the property for a period of more than

seven years prior to the commencement of this action. He also pleaded by way of counterclaim title to the property in question by reason of adverse possession by himself and his predecessors in interest for a period of more than seven years, and asked the court to quiet title in himself. After trial the court found in favor of defendant Slechta, and from a judgment by the court dismissing her complaint and quieting title in Slechta, plaintiff appeals.

From the evidence adduced at the trial it appears that appellant is the record owner of the real property involved in this action which consists of a house and two lots. This property was sold for general taxes for the year 1924 and no redemption having been made of this sale an auditor's deed was executed to Salt Lake County in 1929. There being no purchasers at the May sale held in 1929, the county placed some tenants in possession of this property and on November 4, 1936, contracted to sell the property to a Mr. Randolph C. Hill to whom it subsequently conveyed the property in 1937. After the conveyance to Mr. Hill, he evicted the tenants the county had placed in possession and took possession himself until he conveyed the property to Slechta in 1940, who has been in continuous possession since that date. Plaintiff commenced this action on November 30, 1942.

It was stipulated by the parties to this action that all taxes which had been assessed against this property since the sale in 1924 had been paid by Slechta and his predecessors in interest. It was also stipulated that because of the failure of the county auditor to affix his affidavit to the assessment rolls as required by what is now Sec. 80-7-9, U. C. A. 1943, the tax deed issued to the county was invalid. It was further stipulated that the May sale was advertised for less than 28 days and was therefore invalid.

It is appellant's contention that because of the defects in the tax sale and the May sale that the possession which the county took of the property through its tenants was in subordination and not adverse to her right of possession and that therefore the court erred in finding that she had

not been in possession of the property for a period of more than seven years before the commencement of her action and in finding that the defendant Slechta and his predecessors in interest had been in open, hostile, and adverse possession for a period of more than seven years, since the evidence conclusively shows that less than seven years had elapsed from the time that the county entered into the contract to sell the property to Mr. Hill. Appellant cites. *Salt Lake Investment Co.* v. *Fox,* 32 Utah 301, 90 P. 564, 13 L. R. A., N. S., 627, 125 Am. St. Rep. 865, and *Home Owners' Loan Corporation* v. *Stevens,* 98 Utah 126, 97 P. 2d 744, in support of her argument that the possession of the county through its tenants was not adverse but in subordination to the rights of the legal owner because the invalidity of tax proceedings extended the period of redemption.

In *Salt Lake Investment Co.* v. *Fox,* supra, this court held that a purchaser of a tax sale certificate did not hold the property adversely to the record owner because by the statute of this state the owner had a definite period of time within which to redeem and when the purchaser took possession of the property by virtue of a tax sale certificate it was "in effect, an admission on his part that he held subject to the owner's right of redemption."

It will be noted that possession in the above case was taken by virtue of a tax sale certificate. Such a certificate does not purport to convey title to the land. The purchaser of a tax sale certificate knows that the legal owner has a certain definite period within which he may redeem from the sale and until such period has passed it is presumed that when such purchaser takes possession he takes it in subordination to the right of the owner and not adversely to him. In the instant case the period of redemption from the sale for taxes for the year 1924 which the statute allows had passed and an auditor's deed had been executed to the county. After this deed was issued the county advertised and held a public sale in May as required by Sec. 6056 U. C. L. 1917, as amended by Chap. 140,

Session Laws of Utah 1921, which reads as follows:

"Sec. 6056. Whenever a county has received a tax deed for any real estate sold for delinquent taxes, the board of county commissioners shall, during the month of May in each year, after publication once a week for four consecutive weeks preceding the date of sale, in a newspaper having general circulation in the county, * * * offer for sale at the front door of the county court house, at the time specified in the notice, all such real property not heretofore sold or redeemed; * * *. The county clerk is authorized to execute deeds therefor in the name of the county and attested by his seal, vesting in the purchaser all of the title of the state, of the county, and of each city, town, school, or other taxing district interested in the real estate so sold. * * * The board of county commissioners may, at any time after the period of redemption has expired and before the sale as herein provided, permit a redemption from any sale where the property has been sold to the county. All property for which there is no purchaser at the sale provided for in this section shall thereafter be disposed of on the day of the first regular meeting of the board of county commissioners in any month, at either public or private sale, as the said board may determine, * * *."

No purchaser having been found at the May sale which was held on May 29, 1929, the county, as we have shown, placed its tenants in possession in 1934. The county at that time thought it had complied with all the provisions relating to tax sales and had it complied strictly with all these provisions, title would actually have been vested in the county and would not have been subject to redemption. Under these circumstances the county intended to assert and did assert ownership to the property by placing its tenants in possession, and did not recognize any right of redemption in the original owner.

The case of *Home Owners' Loan Corp.* v. *Stevens*, supra, is of no aid to appellant. That case did not involve an assertion of title by reason of adverse possession. It merely held that where the May sale was invalid a private sale by the county would be void and that the period of redemption would be extended until a valid May sale was held. In so holding, we said on page 133 of the Utah report, on page 747 of 97 P. 2d, that:

"The title to the property, subsequent to the date of the purported May sale, and prior to a private sale to respondents, was the same as it was subsequent to the execution of the auditor's deed to the county and prior to the date of the purported May sale. *The title, by virtue of the sale for taxes and the auditor's deed executed subsequent thereto, was in the county* \* \* \*." (Italics ours.)

This case, therefore, rather than being an aid to appellant's contention that the actual physical possession which the county took of the property through its tenants was in subordination to the rights of the record owner, is more persuasive for the proposition that the county took possession by virtue of its purported ownership of the land. Issuance of an auditor's tax deed did not give the county possession. It was the act of placing tenants in actual possession which initiated possession by the county. The fact that the auditor's deed was invalid and the further fact that because of the invalidity of the May sale a further period of redemption was vouchsafed to the record owner does not change the character and nature of the possession asserted through tenants from being one under a claim of ownership. At the time when the county took possession of the property it did so claiming that it had a valid title, there having been an attempt to comply with all the provisions relating to tax sales. The fact that there were defects in the proceedings did not change the nature of the county's claim. It was open, hostile and adverse to the record owner's right. See *Welner* v. *Stearns et al.,* 40 Utah 185, 120 P. 490, Ann. Cas. 1914C, 1175, in which this court said on page 195 of the Utah report, on page 494 of 120 P.:

"In the case at bar, as we have seen, the county claimed title under a tax deed, and hence claimed from a source other than that through which the respondent Borg claims. For the purpose of meeting the presumption that appellant took and remained in possession in subordination of the paper title, it is immaterial that the tax deed was defective, and did not in law convey an indefeasible title. Appellant's possession was just as much adverse to Borg's title, although the deed was defective, as it would have been if the deed had conveyed a perfect title; \* \* \*."

Although in *Welner* v. *Stearns,* supra, the county conveyed to a third party and did not take actual physical possession itself, the reasoning used therein applies equally where the county itself takes possession under claim of title.

Since the evidence clearly showed a continuous open, hostile and adverse possession by Slechta and his predecessors in interest for a period of more than seven years before appellant commenced her action, the court did not err in dismissing her complaint and in quieting title in Slechta.

Affirmed. Costs to respondents.

McDONOUGH and WOLFE, JJ., concur.

LARSON, Chief Justice (dissenting).

I dissent.

This case presents some very interesting and basic questions, none of which are considered or answered in the opinion. Without entering into any extended discussion I shall attempt to indicate the answer to those questions.

(1) Can the County issue to itself an absolutely void instrument and then use that instrument as a basis for a claim of right and as a color of title to assert an adverse possession?

(2) Since the County is a lienholder and thereby recognizes title in another, can it become an adverse holder of the property on which it asserts a lien?

(3) Can a purchaser of property subject to a right of redemption, adverse the holder of the redemption right?

(4) Is the possession taken under a tax sale or tax title adverse to the owner before the right of redemption expires?

(5) Can the County acquire title to property by adverse user for public purposes?

The opinion by Mr. Justice WADE ignores all these questions, and resolves the case on the simple assertion that the County *must be presumed* to have taken and held possession adversely because it believed it had complied with the law

relative to tax sales and acquiring tax titles. Tax titles do not depend upon good or bad faith. They are not founded upon, nor are they strengthened by a belief on the part of the taxing officials they have complied with the law, or that a compliance with the law is unnecessary. Tax sales and tax title are founded upon statute, and their validity depends upon compliance with the statute, not upon the belief of the County officials. *Telonis* v. *Staley*, 104 Utah 537, 144 P. 2d 513; *Burton* v. *Hoover*, 93 Utah 498, 74 P. 2d 652; *Wall* v. *Kaighn*, 45 Utah 244, 144 P. 1100; 61 C. J. 1291; and cases cited.

The prevailing opinion concedes, apparently, that the County obtained no title to the property and that the owner's title was not affected nor infringed by virtue of the pretended tax sales proceedings; that such proceedings were wholly invalid, and that there was no sale or diminution of plaintiff's title or interest by virtue of such pretended proceedings. Such position must be conceded in the light of the opinions of this court in the case of *Telonis* v. *Staley*, supra, and the other cases cited above. But the opinion says the County could disregard and ignore the void tax sales proceedings and stand upon a possession and adverse holder as an intruder, interloper, trespasser or squatter on the property, without regard to any tax proceeding whatsoever. Assuming for consideration of this particular point, that the county could do so, the record here is conclusive that it did not do so; that each and all of its acts were done under its claims to the property as a tax title holder, and upon that claim alone it based its claim of right and its possession. The record discloses without dispute or equivocation that the County made and makes no claims in the property or no possession thereof except as a tax title claimant; that it took such possession as it had under and by virtue of its pretended tax title. Its possession therefore was that of one possessing and claiming under its purported tax title and could only be adverse to the extent that any rights it could assert under that claim could be adverse.

It is conceded that one who under a deed from the County takes possession of property to which the County had a purported tax deed may adverse the holder of the legal title, even if the tax deed to the County is invalid. *Welner* v. *Stearns,* 40 Utah 185, 194, 120 P. 490, Ann. Cas. 1914C, 1175. But it does not follow that the County's possession under its purported tax deed is adverse. The purchaser from the County may assume that the County had the title which it purports to convey, and so believing that he has a title from one who could convey a title to him he takes possession thereunder in derogation of the title of all others. But as to property he does not own, he cannot execute a deed to himself and then under such pretended deed take possession in derogation of the title of the owner. Yet that is exactly what the prevailing opinion would allow the County to do. Under the rule announced in the *Telonis case,* supra, there was no valid assessment so there could be no valid sale, without a valid sale there could be no valid deed. Without an assessment there could be no color of right to make a sale or execute a deed, or divest, or pretend to divest title. The County can no more be heard to say it did not know it had no right to sell the property, or execute a deed therefor to itself than can any individual be heard to so justify such action on his actions. The County without any semblance of authority in law for so doing, pretended to make a sale of property in 1924, and in 1929 without any color of right so to do, executed a deed to itself, which Slechta now seeks to set up as giving the County some right to possession of the property, on to which he seeks to tack his subsequent claim of title. If such be the rule, a good method to finance the County would be for the County to execute deeds to itself to all property in the County taxable and untaxable and make the owners buy the County off for the price of a lawsuit to remove the cloud.

Since it is admitted that the County, at best, had merely a lien on the property for taxes unpaid—whether the property had been sold, or not sold—can it adverse the owner of the

title? It is admitted that the redemption period had not expired. *Home Owners' Loan* v. *Stevens,* 98 Utah 126, 97 P. 2d 744; *Peterson* v. *Weber County,* 99 Utah 281, 103 P. 2d 652; *Curley* v. *Mills,* 104 Utah 303, 139 P. 2d 882. It is settled law in this state that a right of redemption exists, in the title owner, until there is a valid May sale. *Home Owners' Loan* v. *Stevens,* supra; *Curley* v. *Mills,* supra. It has been conceded that there has never been a valid May sale in this instant case, therefore the subsequent acts of the County with respect to the realty stand on the same footing as though no May sale were attempted. From the holdings of this court it is clear that the period of redemption was extended until the holding of a valid May sale. No such sale having been held, the appellant had the right to redeem the property, until there was a valid May sale, and that right of redemption therefore existed during the time of the County's occupancy. It is clear that this property was at all times subject to the appellant's right of redemption and certainly not adverse to this right of redemption. The County's possession was not adverse, but subject to and consistent with the title of the appellant. The fact that the respondent went into possession under and by virtue of his position as successor to the County was, in effect, an admission on his part that he held the property subject to the owner's right of redemption. *Salt Lake Investment Co.* v. *Fox,* 32 Utah 301, 90 P. 564, 13 L. R. A., N. S., 627, 125 Am. St. Rep. 865; *Pease* v. *Lawson,* 33 Mo. 35; *McKeighan* v. *Hopkins,* 14 Neb. 361, 15 N. W. 711; *Bowman* v. *Wettig,* 39 Ill. 416. *Welner* v. *Stearns,* supra, cited in the prevailing opinion, is authority for the fact that until redemption period expires, there can be no new assertion of title or interest by the County adverse to the original title. To the same effect is *Salt Lake Investment Co.* v. *Fox,* supra. We note also that in the *Welner* v. *Stearns case,* supra, the court specially mentioned the fact that the adverse claimant there held adverse to the county, not under it. In 2 C. J. S., Adverse Possession, § 113, page 664, it is said that where sale is subject to owner's right of redemption

the purchaser's possession is held in subordination to the title of the owner prior to the expiration of the redemption period, although it may become hostile thereafter. It also states that possession under a tax deed will not be considered adverse until expiration of the redemption period. See also *Morse* v. *Seibold*, 147 Ill. 318, 35 N. E. 369; *O'Hanlan* v. *Morrison*, Tex. Civ. App., 187 S. W. 692. In the instant case the time for redemption has probably not yet expired, but it is admitted it had not expired when the County purported to sell to Hill, less than five years before the institution of this suit.

If the County has no power to acquire property except for a public purpose, or pursuant to the tax laws to enforce payment of taxes, it seems self-evident that the County cannot take possession of a piece of property and acquire a title thereto by adverse possession unless such property is being acquired for purposes for which the County is authorized to acquire property. No contention is made that had the County not purported to sell this property to Hill, and was now seeking to quiet its own title to the property, it would be in a position to say it was acquiring this land for public purposes, or that an action to quiet its title was a procedure for the County under the tax laws. Those procedures are set forth in U. C. A. 1943. Let us note the County's right with respect to land. Sec. 19-4-1, U. C. A. 1943, has such powers as specified in Title 19, and such others as are necessarily implied. In *Lund* v. *Salt Lake County*, 58 Utah 546, 200 P. 510, we held that the powers of a county are dependent on statutory grant, and county organizations are more restricted than incorporated cities. Sec. 19-4-3, U. C. A., grants the county the power:

"To acquire and hold land within its limits necessary and proper for county purposes, and on tax sales."

This is the limit of the rights granted to the county. It is given no rights to acquire or sell property for speculative purposes, or as a business, nor to acquire real estate for sale. The powers vested in the Board of County Commis-

sioners are set forth in Chap. 5 of Title 19. Nowhere is there any authority to accept for public purposes authorized by statute, to acquire land, or to go and take possession of private property not specified for public purposes, nor is there any statutory provisions from which such power could be implied.

Since Slechta can show no title without tacking his possession onto that of the County, and since the County's possession could not be adverse to the owner, it must follow the judgment quieting title in Slechta should be reversed. Since this action involves equitable issues, the court below should have quieted title in Bozievich, subject to any lien in favor of Slechta for taxes paid and improvements made, if there was anything so due after accounting between the parties. In short the courts should have done equity between the parties as indicated by Mr. Justice Wolfe in the opinion in *Burton* v. *Hoover*, supra [93 Utah 498, 74 P. 2d 653], wherein it is said:

"The court of equity will make that a part of the total equity it administers to adjust the situation."

TURNER, Justice (dissenting).

I dissent. Adverse possession, in my opinion, was not had until Mr. Hill took possession under his quit claim deed.